**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

IN RE:

AL-HAROON HUSAIN,                                    CASE NO.  14 MP 90007

RESPONDENT.                                         HON.  JACQUELINE COX

**MEMORANDUM OPINION**

Before the court is an Attorney Disciplinary Proceeding brought pursuant to Local

Bankruptcy Rule 9029-4B.[1]  Attorney Al-Haroon Husain ("Mr. Husain") is charged with

violating applicable disciplinary rules by systematically altering documents, reusing debtors'

signatures, signing documents on behalf of clients and causing clients to sign incomplete

documents.  For the reasons noted herein, the Court finds that the United States Trustee has

proven by a preponderance of the evidence that Mr. Husain has violated various disciplinary

rules by systematically altering documents, reusing debtors' signatures, signing documents on

behalf of his clients and causing clients to sign incomplete documents.  Each finding noted herein

is supported by a preponderance of the evidence.  Mr. Husain will be permanently suspended

from the practice of law before the Bankruptcy Court for the Northern District of Illinois due to

the nature and extent of his misconduct.  He has contended throughout these proceedings that he

acted with his clients' consent.  However, the provisions of Federal Rule of Bankruptcy

Procedure 1008 ("Fed. R. Bankr. P.") and 28 U.S.C. § 1746 can not be ignored by an attorney

---

[1] Bankr. N.D. Ill. L.R. 9029-4B(B) (2012) (cited herein as "Local Bankruptcy Rule 9029-4B").

with a client's agreement.

## I. Jurisdiction and Authority

This matter was initiated pursuant to Local Bankruptcy Rule 9029-4B. After being approved by the District Court for the Northern District of Illinois, the Rule became effective on January 1, 2012. It is authorized by, and promulgated pursuant to Federal Rule of Civil Procedure 83 and Fed. R. Bankr. P. 9029. Section 105(a) of the Bankruptcy Code provides additional authority for this Rule, as well as the inherent authority of bankruptcy judges to impose sanctions for misconduct. *In re Rimsat, Ltd.*, 212 F.3d 1039, 1049 (7th Cir. 2000); *Matter of Volpert,* 110 F.3d 494, 500 (7th Cir. 1997); *In re Evergreen Sec., Ltd.,* 570 F.3d 1257, 1273 (11th Cir. 2009); 2 ALAN N. RESNICK & HENRY J. SOMMER, COLLIER ON BANKRUPTCY § 105.02[6][b], at 105-34 (16th ed. 2013).

### A. Background

#### 1. Procedural History

On April 29, 2014, Mr. Patrick Layng, the United States Trustee for the Northern District of Illinois, brought to the court's attention certain conduct on the part of Mr. Husain. Disciplinary Case No. 14-90007 ("Disc. Case"), Docket No. 2, pp. 2-13.

Pursuant to Local Bankruptcy Rule 9029-4B(B), a majority of the judges of this court voted that an evidentiary hearing was warranted in this matter. Before bringing this matter to the court's attention, the United States Trustee ("U.S. Trustee") prosecuted a Motion for Sanctions against Mr. Husain before Judge Carol Doyle regarding his conduct in *In re Hristo Manavski*, Case No. 13-BK-011728. This inclusive proceeding was considered preferable because it covers Mr. Husain's conduct in several cases, including the matter before Judge Doyle.

Mr. Husain was served with the Statement of Charges commencing this proceeding on

June 18, 2014. Disc. Case, Docket. No. 1, p. 12.   Mr. Husain failed to timely answer the

Statement of Charges within 28 days as required by Local Bankruptcy Rule 9029-4B(B)(7).   On

August 7, 2014, Chief Bankruptcy Judge Bruce W. Black issued an Order requiring him to file an

answer by August 15, 2014 and appear for a hearing on August 18, 2014 or the allegations would

be deemed admitted and permanent suspension from practice might result.   Mr. Husain filed his

Answer to the Statement of Charges on August 15, 2014.   Disc. Case, Docket No. 6, mistakenly

noted as the Statement of Charges.   This matter was assigned to this Court for hearing and all

further proceedings.   *See* Disc. Case, Order of August 18, 2014, Docket No. 7.   A discovery

schedule was entered and a January 28, 2015 trial date was set.   The trial of this matter began on

that date; the trial concluded on February 27, 2015.   While the pretrial order required Mr. Husain

to file a list of witnesses by January 16, 2015, none was filed.   He pursued a motion to allow him

to adopt the U.S. Trustee's witness list; that motion was denied.   Disc. Case, Order at Docket No.

24.[2]

U.S. Trustee's Exhibits ("UST Ex(s).") 1-73(z) have been admitted into evidence.

---

[2] It has come to the Court's attention through a press release from the Illinois Supreme
Court that Attorney George N. Panagoulias, who represented Respondent at the trial of this
matter, has been suspended from the practice of law until further order of court, effective March
24, 2015. *See* Illinois Attorney Registration & Disciplinary Commission Report on Attorney
George N. Panagoulias, Case No. 2015 PR 0014. The trial of this matter ended on Friday,
February 27, 2015. The U.S. Trustee was allowed to file Proposed Findings of Fact and
Conclusions of Law by March 26, 2015; that pleading was filed on that date. Respondent, Mr.
Husain, was allowed to file a Response to the U.S. Trustee's Proposed Findings of Fact and
Conclusions of Law by April 30, 2015; that Response pleading was filed on April 28, 2015.   The
Response was signed by Respondent Husain, not by his attorney, Mr. George Panagoulias.   The
U.S. Trustee was granted leave to file a Reply to the Respondent's Response on or before May
13, 2015; that pleading was filed on April 30, 2015.

### 2. The Charges

The Statement of Charges alleges that Mr. Husain started practicing law as an Assistant

Corporation Counsel for the City of Chicago in approximately 1999. He entered private practice

in 2002. His practice consists mainly of bankruptcy cases and real estate transactions. He

generally represents chapter 7 debtors in the Bankruptcy Court for the Northern District of

Illinois.

Marilyn Kaghan was Mr. Husain's employee operating under his sole direction and

control, assisting him in the preparation of petitions and other bankruptcy documents. She also

conducted client consultations and meetings. Mr. Husain has taken responsibility for Ms.

Kaghan's conduct.  Husain's Proposed Findings of Fact and Conclusions of Law, Disc. Case,

Docket Nos. 38 and 39, ¶ 158:

> Regardless, as Respondent has stated, Respondent takes responsibility for all
> actions coming out of his office (and continues to do so). However, none of these
> actions were done with the intention to deceive the Court.

### a. The Hristo Manavski Cases

Debtor Hristo Manavski ("Mr. Manavski") currently resides in Plovdiv, Bulgaria.

According to the deposition testimony of his sister, Mariya Manavska, he was born in Bulgaria

and has resided in Bulgaria continuously since at least 2008. Transcript of Deposition of Mariya

Manavska, UST Ex. 62, 10:3-5; Trial Transcript ("Trial Tr."), 606:15 through 608:5.

Mr. Husain has never met Mr. Manavski and has never spoken to him directly. Trial Tr.,

75:16-21. This is a problem. With the scourge of identity theft, it is not advisable for an attorney

to file a bankruptcy case on behalf of a debtor he or she has never met, getting the documents and

information from a third party. The potential for fraud is too great.

-4-

Notwithstanding Mr. Manavski's residence in Bulgaria, Mr. Husain filed two chapter 7 bankruptcy cases on his behalf, Case No. 12 B 29534 ("*Manavski I*") and 13 B 11728 ("*Manavski II*"). The *Manavski I* petition for bankruptcy relief was filed on July 26, 2012. It indicated that Mr. Manavski resided in DuPage County, Illinois at 128 Forest Glen Road, Wood Dale, Illinois 60191 (the "DuPage County Address"). The filing of that case included schedules and a Statement of Financial Affairs. After Mr. Manavski failed to appear for the 11 U.S.C. § 341 meeting of creditors, the chapter 7 Trustee moved for dismissal. Mr. Husain filed a Motion to Excuse Appearance which indicated that Mr. Manavski resided in Bulgaria; he sought permission for Mr. Manavski to appear for the creditors' meeting via video. That motion was not granted. *Manavski I* was dismissed on December 21, 2012.

On March 22, 2013, the *Manavski II* case was commenced with the filing of a voluntary chapter 7 petition. The *Manavski II* petition indicated that the Debtor resided at 1285 E. Washington Street, Unit 9, Des Plaines, Illinois 60016 (the "Cook County Address"). The U.S. Trustee alleges that although page 1 of the *Manavski II* petition is distinct from the *Manavski I* petition, pages 2 and 3 were taken from the *Manavski I* petition, and the dates next to the signatures of Mr. Manavski and Mr. Husain were altered to recite a new date. The Declaration Regarding Electronic Filing of Petition and Accompanying Documents, the schedules and the Statement of Financial Affairs in *Manavski II* appear to be identical to those filed in *Manavski I*, with the dates altered to reflect the new filing date. The Court finds that the allegation that a new date was added to pages 2 and 3 of *Manavski II* has been proven by a preponderance of the evidence. One need not be a handwriting expert to make this finding. On page 2 of *Manavski I* the date includes a strong slash that touches the signature line above the "t" in "Date". On page 2

-5-

of *Manavski II* the bottom of a strong slash shows up above the "t" in "Date" although it is not

part of the new or altered date, as the new or altered date in *Manavski II* was written a few spaces

to the right from where it was written on *Manavski I*.  It appears at the bottom of the first "2" in

"3/22/13" and has nothing to add to the date.  It is very likely that the person who redated the

*Manavski II* petition did not white out or erase the entire date from *Manavski I* before reusing it.

Mr. Husain and Mr. Manavski's sister testified that *Manavski II* was filed using the Cook

County address because Mr. Manavski was a truck driver who drove trucks from both DuPage

County and Cook County.   The Court finds this position to be incredible.  The contention that

Mr. Manavski had a residence or domicile in either DuPage County or Cook County is belied by

the fact that he resided in the United States from approximately 2005 to 2008 when he returned

to Bulgaria, leaving behind a few items of personal property, including clothing, an iron and a

television.  The evidence showed that he left the Untied States before his sister moved to the

Wood Dale address in DuPage County, meaning that he never resided there.  In addition, in both

*Manavski I* and *Manavski II* the Schedules I - Current Income of Individual Debtor(s) each

indicates that Mr. Manavski was unemployed when each bankruptcy case was filed.  *See* Case

Number 12-29534, Docket No. 6. p. 20 and Case Number 13-11728, Docket No. 5, p. 20.

Mr. Husain used the Cook County address for the *Manavski II* case because he believed

that a Cook County chapter 7 Trustee would allow Mr. Manavski to appear for the creditors'

meeting via Skype.

The documents filed in *Manavski II* contained information that Mr. Husain knew was

materially inaccurate.  The *Manavski II* petition failed to disclose the *Manavski I* case, even

though Mr. Husain filed that prior case on Mr. Manavski's behalf. [3]

In addition, Mr. Manavski's purported change of address from the DuPage County address to the Cook County address was not disclosed. Question 15 of the Statement of Financial Affairs asks the debtor to list all premises that the debtor has occupied in the three years preceding the commencement of the case. Mr. Husain and Mr. Manavski failed to disclose any prior addresses in answer to Question 15 in *Manavski II*, even though Mr. Manavski claimed to have resided at the DuPage County address in 2012 in the *Manavski I* petition. Mr. Husain did not disclose Mr. Manavski's Bulgaria address in either bankruptcy case. When the Statement of Financial Affairs in *Manavski II* was filed Mr. Husain knew of three addresses for Mr. Manavski, including the address in Bulgaria.

After *Manavski I* was dismissed Mr. Husain told Ms. Manavska that the only way he would refile the case was if her brother had a residence in Cook County. UST Ex. 67, 19:21-22. Mr. Husain testified that Ms. Manavska thereafter told him that her brother "lives in Cook County." UST Ex. 67, 19:24. Prior to filing *Manavski II* Mr. Husain did not ask Ms. Manavska when her brother had last lived in Cook County. UST Ex. 67 at 49:12-19.

---

[3] Mr. Husain failed to disclose prior cases several times when filing subsequent cases where he was the attorney in each case. He filed Case 12-31079 on behalf of Shahid and Erum Ahmed on August 4, 2012 (dismissed on September 5, 2012) but did not disclose that case in the Petition for Case 12-43056, which he filed on behalf of the same parties on October 30, 2012. *See* Bankruptcy Case 12-43056, Dkt. No. 1, Petition, p. 2. He filed Case 12-01209 on behalf of Farooq and Sara Sultan on January 13, 2012 (dismissed on February 24, 2012) but did not disclose that case in the Petition for Case 12-42041 which he filed on behalf of the same parties on October 23, 2012. He filed Case 12-28290 on behalf of Ashout and Rina Ibraheem on July 17, 2012. He filed Case 12-37673 on behalf of the same parties on September 24, 2012, but did not disclose the 12-28290 case therein. *See* Case No. 12-37673, Dkt. No. 1, Petition, p. 2. Mr. Husain filed Case 14-02434 on behalf of Fareedun Ansari on January 27, 2014 (dismissed on March 6, 2014). He filed Case 14-17200 on May 6, 2014 on behalf of the same party but did not disclose the 14-02434 case therein. *See* Case 14-17200, Dkt. No. 1, Petition, p. 2.

The Schedules F filed in *Manavski I* and *Manavski II* are identical even though the cases

were filed nearly a year apart. Schedule F in *Manavski II* may have failed to account for

additional debt from interest and other charges that could have accrued since *Manavski I* was

filed.

The Court does not find credible the testimony that a truck driver who had been absent

from the United States since 2008 maintained residences in both DuPage County and Cook

County in 2012 and 2013 from which he drove trucks, while he actually lived in Bulgaria.

At trial Mr. Husain testified that he had known Mariya Manavska for three or four years

as the wife of a good friend and client when she approached him in 2012 to file a bankruptcy

case for her brother. (Trial Tr., 388:22 through 389:20). Ms. Manavska testified, however, that

she first met Mr. Husain in 2012 when he filed *Manavski I* for her brother. (Trial Tr., 612:3-12).

An amended motion for sanctions was filed against Mr. Husain in *Manavski II. See* Case

13-11728, Docket No. 58. Paragraph 14 of the amended motion states "Pages 2 and 3 of the

Current Petition, however, appear to be the same pages of the Prior petition, with the dates next

to Manavski's and Husain's signatures altered to recited a new date. The alteration is particularly

evident in viewing the date directly beneath Manavski's signature on page 3 of the Current

Petition." Mr. Husain admitted the Trustee's statement in Paragraph 14. UST Ex. 11(d), § 14.

Paragraph 6 of the disciplinary complaint herein alleges:

> On March 22, 2013, *Manavski II* was commenced with the filing of a voluntary Chapter 7
> petition ("the *Manavski II Petition*"). The *Manavski II* Petition indicated that the Debtor
> resided at 1285 E Washington Street, Unit 9, Des Plaines, Illinois 60616 ("the Cook
> County Address"). Although page 1 of the *Manavski II* Petition is distinct from the
> *Manavski I* Petition, pages 2 and 3 are simply taken from the *Manavski I* Petition, with
> the dates next to the signatures of Manavski and Husain altered to recite a new date. The
> Declaration Regarding Electronic Filing of Petition and Accompanying Documents, the

-8-

Schedules and the Statement of Financial Affairs in *Manavski II* were also identical to those filed in *Manavski I,* with only the dates altered to reflect the new filing date.

Husain answered: Respondent admits to Court's statement in paragraph 6. Manavski reviewed both files and gave his approval. (See Attached Exhibit B and Disciplinary Case 14-9007, Dkt. No. 6, p. 3 (The caption states that it is a Statement of Charges, it is the Answer to the Statement of Charges)).

Attached as Exhibit B is the affidavit of Mr. Husain's employee Marilyn Kaghan. She stated therein that the client instructed her to refile the case utilizing the client's other residence, that the same documents were valid, that she was instructed by the client that the same signature was fine and that he had no objection to the date on the application being changed.

At trial Mr. Husain denied signing his name to the petition in *Manavski II*. He testified that he directed Ms. Kaghan to sign for him. Trial Tr., 129:18 through 130:2. Ms. Kagan identified the signature as Mr. Husain's. Trial Tr., 1005:5 through 1006:9. She also testified that she has never signed Mr. Husain's name to a document. Trial Tr., 1009:1-6.

Another allegation is that the *Manavski II* Declaration, UST Ex. 3, is the *Manavski I* Declaraion, UST Ex. 7, with the date under the Debtor's signature modified from July 23, 2012 to March 22, 2013. Mr. Husain admits that allegation in ¶ 6 of his Answer, adding that Mr. Manavski reviewed both files and gave his approval. Disc. Case, Docket No. 6, p. 3. May a lawyer's client consent to the lawyer's noncompliance with substantive and procedural requirements? No.

The *Manavski II* schedules are with limited exceptions, identical to those filed in the *Manavski I* case. *See* UST Exs. 4 and 8. The Declaration Concerning Debtor's Schedules filed in *Manavski II* is the same document filed with the *Manavski I* schedules with the date changed to March 22, 2103. Telling in this regard are the dashes/marks above the two "2s" in "3/22/13".

-9-

Those dashes/marks were probably caused by the use of whiteout fluid - not all of the July 23,

2012 date was whited out, leaving the dashes/marks above the two "2s". In addition, the

whiteout fluid took out most of the signature line on *Manavski I* Declaration's, leaving only part

of the line under the *Manavski II* Declaration's March 22, 2013 signature. The Court notes that

in the Motion for Sanctions in the 13-11728 case it was alleged that:

> Declaration Concerning Debtor's Schedules filed with the Current Schedules is an altered
> version of the same document filed with the Prior Schedule. *Compare* Exhibit E, p.22
> *with* Exhibit F, p.22.

Mr. Husain answered:

> Answer: Attorney can lack sufficient knowledge to admit or deny Trustee's statement.
> Attorney unclear by what Trustee states as 'altered version.' If Trustee is implying that
> the dates were changed then said changes were done by Kaghan. Said changes were
> authorized by Debtor Manavski. Said verification was stated in an affidavit provided
> Trustee. *See Attached Exhibit C.*

Case 13-11728, Docket No. 59, ¶ 18.

Exhibit C is the affidavit of Mr. Manavski. He stated that his signature was fine, that his debts

had not changed, that, to his knowledge, nothing else had changed on these documents, and that

he had no objection to the date on the application being changed.

    The Statement of Financial Affairs filed electronically in *Manavski II* by Mr. Husain is

the same Statement of Financial Affairs that was filed in *Manavski I* with the date next to Mr.

Manavski's signature changed to March 22, 2013. Mr. Husain admitted this allegation in the

Motion for Sanctions:

> (Allegation): The Current SOFA [Statement of Financial Affairs ] is precisely the *same*
> *document* that was filed on the Prior Case (attached as Exhibit H), with the date next to
> Manavski's signature altered. *Compare* Exhibit G, p.11 *with* Exhibit H, p.11.

> Answer: Attorney denies Trustee's statement insofar as it implies that Attorney falsified

-10-

said document. Attorney admits the date was updated, per the authorization of the Manavski. Verification of said authority was provided to Trustee via an affidavit Manavski. Trustee is in possession of said affidavit and intentionally fails to present said affidavit to this Court. *See Attached Exhibit C.*

Case 13-11728, Docket No. 59, ¶ 20.

Mr. Husain's response is of no value. Federal law requires that the person making the statement sign it under penalty of perjury. Signing and dating documents must not be done by a lawyer on behalf of a client.

In his response to the Motion for Sanctions Mr. Husain admitted that the *Manavski II* petition, *Manavski II* Declaration, *Manavski II* schedules and the *Manavski II* Statement of Financial Affairs were filed electronically using his CM/ECF account. *See* Case 13-11728, Docket No. 64, ¶ 21, p.5.

The *Manavski II* Schedule B indicates that as of March 22, 2013, Mr. Manavski had cash totaling $200, household goods worth $600 and wearing apparel worth $200. UST Ex. 4, p. 2. The *Manavski II* Schedule B indicates that this personal property was located at the Cook County Address on March 22, 2013. (Id.) The *Manavski I* Schedule B, filed on July 26, 2012, states that the same property (with the same values as of July 22, 2013) was located at the DuPage County Address. UST Ex. 8, p.2. The *Manavski I* Schedule B is highly suspect; Mr. Manavski was in Bulgaria in 2012 and 2013. Mr. Husain testified at trial that the property listed on the *Manavski I* Schedule B is distinct from the property listed on the *Manavski II* Schedule B. However, in his Response to the Motion for Sanctions in *Manavski* II Mr. Husain stated:

> At all times, the filings were identical (save for the filing date signed). No debts were removed or added. No assets were removed or added. UST Ex. 11(b), ¶ 7.

Mr. Husain did not say in that Amended Response, filed on February 19, 2014, that the schedules

were distinct, he said they were identical, that nothing had changed, and that only the date was

changed. The Court finds that the property listed on the *Manavski I* Schedule B is the same

property listed on the *Manavski II* Schedule B.[4]  In addition, Mr. Husain testified that he has not

seen any of the personal property attributed to Mr. Manavski in either the *Manavski I* Schedule B

or the *Manavski II* Schedule B. Trial Transcript at 133:17-19.

Although Mr. Manavski lived in Bulgaria when each bankruptcy case was filed neither

the *Manavski I* Schedule B nor the *Manavski II* Schedule B discloses any personal property of

Mr. Manavski's as being located in Bulgaria. Mr. Husain testified that he forgot to ask Mr.

Manavski about any property that he might have owned in Bulgaria, as he was "too busy

concentrating on what he had in the U.S." Trial Tr., 101:22-24; 127:5-7.

Debtor Manavski's sister, Ms. Manavska, testified that her brother has no cash in the

United States and that he left an iron, pots, pans and clothing at the home of her friends. She was

not sure if he left a television set in the United States.   But that she has a really old computer he

left behind. Trial Tr., 618:1-12, 620: 9-21, 620:25 and 621:1-5. The items left behind were not

left in a storage box with the Debtor's name on it. (Trial Tr., 620:18-22).

---

[4]The Court notes UST Exhibit 19(a) which is a compilation of 142 bankruptcy cases filed
by Husain from 2010 through 2014. In most of those cases each debtor reported on his or her
Schedule B $200 cash on hand, household goods valued at $600 and wearing apparel worth
$200. In 106 of the 110 Schedule Bs Husain filed in consumer bankruptcy cases since January 1,
2011, his clients have reported $200 cash, the same amount of cash Mr. Manavski purportedly
possessed in both DuPage County and Cook County.

Ninety-three of the 110 Schedules B filed by Husain since January 1, 2011 report that
each debtor had the same value of cash, household goods and wearing apparel as Mr. Manavski.
Husain's testimony that the information reported in those many instances came from his clients is
suspect. Trial Transcript 69: 20-21. He also testified that he knows his clients' backgrounds,
that most of them are from Little India and that most of them have about $200. Trial Tr., 60:7-15.

The Schedules F of Creditors Holding Unsecured Nonpriority Claims for the two cases reported identical amounts. Trial Tr., 136:15-24. Mr. Husain testified that he redid the Schedules F with a credit report obtained before *Manavski I* was filed, eight months before the filing of *Manavski II.* He said that he reviewed it with Mr. Manavski but quickly backtracked, admitting that he never met or spoke with Mr. Manavski. Trial Tr., 137:12-25; 138:1-19.

Mr. Husain did not obtain an updated credit report to determine whether Mr. Manavski's debts changed from when the first case was filed in 2012 to when the second case was filed in 2013. Trial Tr., 138:14-25, 139:1-4. Mr. Husain testified that based on his experience the debts did not change because they get "capped" when they are sent out for collection. Trial Tr., 139:23-25; 140:1-12.

Mr. Husain has been accused of signing clients' names to documents between 2010 and 2012. He does not dispute this. He answered that charge:

> [r]espondent does not recall nor has sufficient knowledge to admit or deny Court's statement on specific cases. In general, however, Respondent only had done so with express consent of client, after all documents had been reviewed. Regardless, Attorney had discussed this matter with Trustee's office in 2012 (same year as all of the above matters). Trustee expressed concern over this issue. Attorney shared those concerns, because, though clients had authorized the signing, and acquised [sic] to the signature at the 341 meetings, Respondent felt uncomfortable of this 'grey area.' Respondent implemented procedures to ensure the client's signature are their own. Disc. Case, Answer, Docket No. 6, ¶ 12.

Mr. Husain admitted that there is no notation next to the clients' signatures to indicate that someone other than the clients signed the documents. *Id.,* Docket No. 6, ¶ 13.

The Court finds that Mr. Husain committed the following acts of misconduct regarding the *Manavski I* and *II* cases:

> a. pages 2 and 3 of the *Manavski II* petition were altered to recite a new date

-13-

without having the debtor personally sign those pages under penalty of perjury;

b. a Cook County address was used in *Manavski II* even though Mr. Husain knew

that Mr. Manavski resided in Bulgaria and had no personal property in Illinois to

support a residence in the United States as required by 11 U.S.C. § 109(a);

c. the *Manavski II* petition failed to disclose the *Manavski I* case;

d. the Statement of Financial Affairs in *Manavski II* did not list all premises Mr.

Manavski occupied in the preceding three years;

e. the Schedules F in *Manavski I* and *Manavski II* were identical even though the

cases were filed at different times;

f. the Schedule F in *Manavski II* failed to account for additional debt from interest

and other charges that could have accrued since the filing of the first case.

### b.  In re Mirza and Sakeena Baig, Case No. 10-57570

Mr. Husain represented Mirza and Sakeena Baig in Case No. 10-57570, filed on

December 30, 2010.  Mrs. Baig recognized their signatures on the Declaration of Electronic

Filing.  However, Mrs. Baig testified that the signatures on the schedules filed in that case are not

hers and that she does not know who signed her name to the document.   She did not recognize

the signatures on the Declaration Concerning Debtor's Schedules; she did not know who signed

her name. There are two signatures there; no names are printed under the signatures.  She also

testified that the Schedule A of Real Property included an address for property on Seeley street

that she and her husband did not own and that three properties they owned were not disclosed

there, including real property in Collinsville, Illinois that she told Mr. Husain about.  Two cars

that Mr. Husain was told about were not listed on Schedule D - Creditors Holding Secured

-14-

Claims. She did not recognize signatures on the Statement of Financial Affairs filed in their joint case. Trial Tr., 562-567; UST Ex. 53, pp. 13-14.

Mr. Baig testified that he and his wife signed the bankruptcy petition and a Declaration of Electronic Filing in their case. Trial Tr., 510-511. He did not recognize the signatures on the schedules filed in their bankruptcy case and he does not know who signed those documents. Trial Tr., 512:5-14. He testified that real property located in Collinsville and on Michael Manor in Glenview were not disclosed on the Schedule A - Real Property. He testified that he did not recognize the signatures on the Statement of Financial Affairs. Trial Tr., 515:2-22. He also testified that there were no signatures on an Amended Statement of Financial Affairs. Trial Tr., 516:17-19; UST Ex. 31(d).

Mr. Baig testified that he did not recall speaking with Mr. Husain or anyone at his office about an Amended Schedule D - Creditors Holding Secured Claims filed in their case. Trial Tr., 519:10-13. Mr. Baig was not sure if he and his wife signed documents at the same time, but he was clear about signatures that he did not recognize. Trial Tr., 531:11-25.

Mrs. Baig was not aware that someone would sign her name to bankruptcy case documents. Trial Tr., 561:5-14. Mr. Baig did not authorize anyone to sign his name on bankruptcy documents. Trial Tr., 509:13-20. When he went to his office, Mr. Husain showed him where to sign the documents. Trial Tr., 508:12-19. At his deposition he was asked whether Mr. Husain went through the papers with him or did he just sign them. Mr. Baig answered "I just sign [sic] them." UST Ex. 52, p.9.

Mr. Husain admits that he signed Mr. and Mrs. Baigs' names to their Statement of Financial Affairs, but that he did so with their permission and under exigent circumstances due to

-15-

a foreclosure, even though no foreclosure proceedings were reported in the Statement of

Financial Affairs. Trial Tr., 43:21 through 54:13; UST Ex. 31(d). However, his explanation

lacks credibility in the face of the Baigs' testimony that he was not authorized to sign documents

on their behalf. In any event, federal law prohibits him from signing documents for clients in

bankruptcy cases. Fed. R. Bankr. P. 1008 and 28 U.S.C. § 1746 require the person making the

statement to complete documents under penalty of perjury.

　　　The material inaccuracies in the Baigs' schedules are a result of Mr. Husain's failure to

have them sign their bankruptcy documents. Those inaccuracies include:

　　　　　a. the omission of two pieces of real property from Schedule A;

　　　　　b. the omission of three motor vehicles from Schedule B;

　　　　　c. the omission of a Bank of America bank account from Schedule B;

　　　　　d. the omission of an Individual Retirement Account from Schedule B; and

　　　　　e. the omission of a whole life insurance policy from Schedule B.

Trial Tr. 226:17-25; 227:1-14. Mrs. Baig testified that during her second meeting with Mr.

Husain prior to the filing of the bankruptcy case:

　　　　　Q. Did you give him any information about your assets at that second meeting?

　　　　　A. Yeah. I gave him my account – you know, statements from my account and for
　　　　　my IRA and life insurance. He says we don't need it. Because I ask him, because
　　　　　we have life insurance and IRA. And he said we don't need that.

UST Ex. 53, 9:14-20.

　　　The Court finds that Mirza and Sakeena Baig were not aware that Mr. Husain signed their

names to the schedules and Statement of Financial Affairs and that Mr. Husain did not review the

documents with them prior to filing them. His failure to review the documents with them is not a

-16-

separate charge/allegation; it is a consequence of his signing their names to documents. Had he reviewed the documents with the debtors he would not have had to sign them. They could have reviewed them, corrected them and signed them in one sitting.

The Court finds that Mr. Husain or someone under his control illegally signed the Petition (Docket No. 1), the Declaration of Electronic Filing (Docket No. 7), Schedules A - J (Docket No. 20) and the Statement of Financial Affairs (Docket No. 21) on behalf of the Baigs.

### c. In re Kauser Banu, Case No. 12-28112

Mr. Husain represented Ms. Kauser Banu in Bankruptcy Case 12-28112 which was filed on July 18, 2012. Ms. Banu did not testify at the trial of this matter, however, she was deposed on December 5, 2014. She testified that she did not execute the signatures that purport to be hers on four documents:

      1. the petition, UST Ex. 54, 13:16;

      2. the Statement of Social Security Number, UST Ex. 54, 12:12-18;

      3. the Declaration of Electronic Filing, UST Ex. 54, 14:14-19;

      4. the Statement of Financial Affairs (uncharged conduct), UST, 54, 13:17-24.

She also testified that the date on the signature on the schedules is not her handwriting. UST Ex. 54, 14:9-13.

Ms. Banu testified about a conversation with Mr. Husain:

> Q. And so it sounds like from what you were saying before there was a conversation at some point about someone signing documents for you?
>
> A. Signing documents for you like – he called me and he said I missed two of the papers. So that's what I remember. Because the signature where he told me to sign it, I didn't look at all of the papers. And then I said like is there anything that I can Xerox a letter or anything, he said I can write your name, I said go ahead.

-17-

Q. And that was back when the case was filed?

A. Yeah.

Q. So July of 2012?

A. Yeah, I think.

UST Ex. 54:11: 9-23.

Ms. Banu understood that someone signed her name on two documents. UST Ex. 54, 12:7. However, clients can not effectively give such consent because federal law requires that the person making the statement sign it under penalty of perjury.

The Court finds that Mr. Husain violated federal law and various rules of professional conduct by signing four documents on Ms. Banu's behalf. The failure to schedule Ms. Banu's Toyota Highlander motor vehicle on the Schedule B - Personal Property resulted from Mr. Husain's failure to review the documents with her and have her sign them before filing them.

The Court finds that Mr. Husain or someone under his control signed Debtor Banu's name to the four documents listed above. His Proposed Findings of Fact and Conclusions of Law ("Husain's Proposed Findings") indicate that:

"[a]lthough the bankruptcy documents (e.g. the petition, schedules, Statement of Financial Affairs, etc.) were not completed at the initial meeting, it was routine practice to obtain the client's signatures on all documents, including the Declaration of Electronic Filing for Documents filed after Petition." Disciplinary Case No. 14-90007, Docket No. 39, ¶ 32.

At Paragraph 39 of his Proposed Findings, Mr. Husain asserts that:

"[a]round the time he ceased signing clients' names to documents on their behalf, Mr. Husain testified that he started the practice of having his clients sign documents at the outset of the representation, before the documents were completed . . . In his Answer, Mr. Husain explained that this practice was 'to insure all signatures were authentic, and to prevent clients from forgetting to sign [the documents].'" Id., ¶ 39.

-18-

He also claimed therein that no documents were filed with the Court until such time as the documents were reviewed with the clients.

The court finds that Mr. Husain had documents signed by his clients before they were filled out without any regard to the documents' contents and without regard to the clients' obligation under federal law to sign their bankruptcy documents under penalty of perjury.

A Trial Attorney for the U.S. Trustee's Office testified that he did not know of an Illinois law that prohibits lawyers from signing documents on behalf of a client. However, this testimony does not concern whether Fed. R. Bankr. P. 1008 and 28 U.S.C. § 1746 prohibit such. In any event the Court is not bound by a lawyer's opinion regarding what the federal rules and statutes require.

### d. *In re Syed Hussaini*, Case No. 12-10086

Mr. Husain represented Syed Faisal Hussaini in the above bankruptcy case; it was filed on March 14, 2012. That debtor did not testify at trial. Mr. Hussaini testified at a December 9, 2014 deposition that he did not execute signatures that purport to be his on Declarations of Electronic Filing filed in his case on March 15, 2012 and March 19, 2012. UST Ex. 58, 16:12-22, 17:13-24; UST Exs. 33(b) and 33(e). It appears that the same document was filed twice; each declaration is dated March 13, 2012.

Mr. Hussaini testified that Mr. Husain telephoned him to ask for authorization to sign one document on his behalf because he was tied up. According to Mr. Hussaini, Mr. Husain signed a document on his behalf. UST Ex. 58, 13:10-18.

The declarations signed on behalf of Mr. Hussaini are sworn attestations to the accuracy of the petition, statements, schedules and other documents filed with the petition for bankruptcy

relief. UST Ex. 33(b). However, Mr. Hussaini testifed at a Fed. R. Bankr. P. 2004 examination

conducted on August 9, 2012, that the Schedule B - Personal Property omitted his 1998 Cadillac

Seville and a retirement account. UST Ex. 69, 9:13 to 12:10. He also testified that the Schedule

J - Current Expenditures of Individual Debtor(s) showed him to have a monthly income surplus

of $3,331.75. He was advised by the Trial Attorney from the Office of the United States Trustee

that when debtors have extra income they should be in a chapter 13 case. Mr. Hussaini said he

did not know why that document showed $3,300 extra. UST Ex. 69, 16:16-23. He also testified

that he did not recognize the signature on an Amended Schedule I - Current Income of Individual

Debtor(s) that purported to be his. UST Ex. 69, 18:1-21.

The Court finds that Mr. Husain or someone in his employ signed Mr. Hussaini's name to

the Declaration, attesting to the accuracy of schedules that were materially inaccurate.

### e. In re Ghulam Haider and Nazra Begum, Case No. 12-17531

Mr. Husain represented Ghulam Haider and Nazra Begum in the above bankruptcy case

which was filed on April 30, 2012. Those debtors did not testify at trial. However, they

appeared for depositions in this matter on December 9, 2014.

Mr. Haider denied signing the Declaration Regarding Electronic Filing Petition and

Accompanying Documents filed in their case on May 1, 2012 at Docket No. 15. UST Ex. 60,

11:2. He said that he told Mr. Husain he could sign his name on documents explaining: "[s]ince

I was far away, so I did permit him to do - do the signatures, and any missed - whatever

required." UST Ex. 60, 10:9-11. His wife, Nazra Begum, testified that Mr. Haider signed the

Declaration. UST Ex. 59, 12:6 through 13:3. The Court accepts Mr. Haider's testimony

regarding his signature. While the Court respects Ms. Begum's opinion that her husband signed

-20-

the document, Mr. Haider knows best whether a signature is his, and the Court accepts his

testimony that he did not sign the declaration.

Mr. Haider's 2005 Honda motor vehicle was omitted from Schedule B - Personal

Property. Mr. Husain allowed the filing of a declaration attesting to the accuracy of schedules

that were not accurate when he disregarded federal law by signing Mr. Haider's name on the

Declaration.

Mr. Husain asserts that he filed amended corrected documents when problems with

documents originally filed were brought to his attention. He suggests that this is the purpose of

amended schedules. *See* Mr. Husain's Proposed Findings, Disc. Case, Docket Nos. 38 and 39, ¶

108. Amendments are liberally allowed. However, the process does not contemplate filing

documents not signed by clients under penalty of perjury in the first instance and later amending

them when a trustee or creditor questions them.

The Court finds that Mr. Husain or someone under his control signed the Declaration of

Electronic Filing (Docket No. 15) as Mr. Haider testified that the signature on it is not his.

### f. Farooq Sultan and Sara Sultan, Case Nos. 12–01209 and 12-42041

Mr. Husain represented Farooq and Sara Sultan in the above two bankruptcy cases. Mr.

Husain also represented several of Mr. Sultan's businesses, including OF&A Retailers, Inc., in

bankruptcy and other legal proceedings. Trial Tr., 907:11-25 and 909:2. *See* Case 13-23120 of

OF&A Retailers, Inc. which Mr. Husain filed.

Although Mr. Husain represented the debtors in both of their bankruptcy cases, when the

second case, 12-42041,was filed, the first case, 12-01209, was not disclosed. *See* Cases 12-

01209 and 12-24041, Docket No. 1.

The U.S. Trustee has not carried its burden to prove that Mr. Husain signed documents on

behalf of Farooq Sultan and Sara Sultan as Mr. Sultan testified at trial that various signatures

were his or his wife's. However, he could not say whether the signatures were photocopies of

original signatures. Trial Tr., 933:21 through 934:2.

### g. In re Fadi Freij, Case No. 12-17865

Mr. Husain filed the above bankruptcy case on behalf of Fadi Freij on April 30, 2012.

The U.S. Trustee asserts that the Debtor's purported signature on a Statement of Financial

Affairs filed on May 14, 2012, UST Ex. 36(f), was reused on an Amended Statement of Financial

Affairs, UST Ex. 36(g) filed on July 12, 2012. There is neither trial testimony nor deposition

testimony from Debtor Freij herein. For that reason Court finds that this assertion has not been

proven by a preponderance of the evidence.

### h. In re Ashout and Rina Ibraheem, Case Nos. 12-28290 and 12-37673

Mr. Husain represented Ashout and Rina Ibraheem in the two bankruptcy cases noted

above.

The Ibraheems' first case, 12-28290, was filed July 17, 2012. While that case was

pending, Mr. Husain filed a second bankruptcy case on their behalf on September 24, 2012. UST

Ex. 38(a). The first case was not closed until November 13, 2012. *See* Case 12-28290, Docket

No. 38. The second filed case was dismissed after a discharge was entered on the Debtors'

behalf in the first filed case. See Case. 12-37673, Docket No. 33.

Mr. Husain stated in an affidavit filed in the first case that his law firm believed that the

first filed case had been dismissed, when it had not been dismissed.  The petition initiating the

second case did not disclose the existence of the first case.  UST Ex. 38(a).

Mr. Ibraheem testified at a deposition that he was not aware that Mr. Husain filed the

second case on his behalf. UST Ex. 42, 26:2-20.  Ms. Kako, Mr. Ibraheem's daughter, who

attended her father's deposition, testified at her subsequent deposition that she believes her father

was confused about his second case and believed that he filed bankruptcy twice and was

discharged twice.  She also commented that it was actually filed twice but discharged once.  UST

Ex. 44, 22:6-14.

Mr. Ibraheem testified that the signature purporting to be his on the petition filed in Case

12-28290 was not signed by him.  He said that he was told that someone else could sign it for

him.  UST Ex. 42, 7:19-24; 8:4-24; 9:16-24 and 10:1-19.  At trial Mr. Husain denied signing Mr.

Ibraheem's name to the petition in Case 12-28290, but admitted that he had signed the petition in

Mr. Ibraheem's second bankruptcy case, Case 12-37673.  Trial Tr., 55:11 and 56:5.  Mr.

Ibraheem testified that he believed that Husain would sign his name to only one document.  UST

Ex. 42, 11:8-14.

Mr. Husain thereafter filed additional documents in Case No. 12-28290 purporting to bear

Mr. and Mrs. Ibraheem's signatures.  The documents not signed by them include a declaration

pertaining to an amended Schedule B filed November 1, 2012, UST Ex. 37(f); a declaration

pertaining to an amended Schedule C filed November 1, 2012, UST Ex. 37(h); and a declaration

pertaining to an amended Schedule I filed November 1, 2012, UST Ex. 37(j).  *See* UST Ex.  42,

15:5-13; 15:18  through 16:7; UST Ex. 43, 7:21 through 8:10.  When he reviewed the

declarations at his deposition, Mr. Ibraheem surmised that Husain had signed them:

-23-

> As I told you earlier, that when he called me once, and he told me that I'm missing – he's missing my signature on the paper, and I told him if it's not necessary for me to come in over there and sign this paper, he can sign it on my behalf, that was the only time I told him to sign my name on these papers.
>
> I don't know if he had other papers he signed them or he talked to my kids about other papers, and he signed them on my behalf. I don't know about that.

UST Ex. 42, 16:17 through 17:3.

Ms. Kako, the Ibraheems' daughter, testified that she had multiple conversations with both Ms. Kaghan and Mr. Husain during which she told them that Mr. Husain could sign documents on her parents' behalf. UST Ex. 44, 6:4-17 and 7:18. She also testified that she attended a meeting at Mr. Husain's office with her parents where the information for the schedules was provided; the meeting was with Mr. Husain. Ms. Kaghan did not attend. UST Ex. 44, 10:3-15.

Mr. Ibraheem and Ms. Kako testified at depositions that there are inaccuracies in the schedules Mr. Husain filed. Mr. Ibraheem testified that he had two bank accounts on the petition date. UST Ex. 42, 19:9-20 through 20:15. Ms. Kako testified that she believes that Mr. Husain was told of these accounts when she and her parents met with him concerning the schedules. UST Ex. 44, 11:10-18.

The original Schedule B - Personal Property indicated that the Ibraheems had no bank accounts and that their personal property consisted of $200 cash; furniture, TV [and] Computer valued at $600, wearing apparel valued at $200 and a retirement account and two motor vehicles. UST Ex. 37(c), pp. 2-4. On November 1, 2012, the Ibraheems' names were purportedly signed to a declaration for an amended Schedule B that disclosed one of the two accounts. UST Exs. 37(e) and 37(f); Case 12-28290, Docket No. 26.

The Court finds that Mr. Husain or someone under his control signed the Ibraheems' names to the two bankruptcy petitions filed on their behalf and the three declarations noted herein as UST Exs. 37(f), 37(h) and 37(j).

### i. In re Ghousia Iqbal, Case No. 12-18911

Mr. Husain filed the above case on Ms. Iqbal's behalf on May 8, 2012.

Paragraph 12 of the Statement of Charges alleges that someone other than Ghousia Iqbal signed her name to certain documents filed in her bankruptcy case. Ms. Iqbal's testimony indicates that she did sign the documents, albeit with a spelling of her name that is different from the spelling used in the petition. UST ex. 61, 20:1-4.

The evidence demonstrates that the schedules and Statement of Financial Affairs filed in Ms. Iqbal's bankruptcy case are materially inaccurate and were not adequately reviewed with her prior to filing. UST Ex. 61, 22:3. The schedules' inaccuracy was initially shown by Mr. Husain's comments and Ms. Iqbal's testimony at her meeting of creditors, a transcript of which is in evidence as U.S. Trustee Exhibit 34(o). For example:

> a. Ms. Iqbal's original Schedule A - Real Property indicates that on the filing date she owned real property at 15217 Waterman Drive (with equity of approximately $51,219, due to a value of $89,200 and a lien in the amount of $37,981). UST Ex. 34(e), p. 1. It came out at the section 341 creditors' meeting that she did not own that property. UST Ex. 34(o), 4:18-22.

> b. The original Schedule B indicated that Ms. Iqbal had no bank accounts, had $200 cash at 1312 W. Argyle Street, $600 in household goods and furnishings at 1312 W. Argyle Street, $200 in wearing apparel at 1312 W. Argyle Street and a 2004 Honda Civic. UST Ex. 34(e). This information is not accurate. She testified that she had a bank account, that she did not own a Honda Civic, that she had no furnishings and that she had no familiarity with 1312 W. Argyle Street. UST Ex. 34(o), 6:2 through 8:8.

After Ms. Iqbal's creditors' meeting Mr. Husain filed amended Schedules A and B. UST

-25-

Ex. 34(g).  The amended Schedule A did not include the 15217 Waterman Drive property that

was erroneously listed on the original Schedule A.  The Amended Schedule B did not include the

Honda Civic that was erroneously listed on the original Schedule B.  *Id.*  However, the amended

Schedule B persisted in inaccurately representing that Ms. Iqbal had no bank accounts, had $200

cash at 1312 W. Argyle Street, had $600 in household goods and furnishings at 1312 W. Argyle

Street and had $200 in wearing apparel at 1312 W. Argyle Street.  *Id.*

Other alleged inaccuracies in the schedules and Statement of Financial Affairs were

revealed during Ms. Iqbal's deposition:

> according to Ms. Iqbal the Schedule D lists the wrong secured creditors with the
> wrong claim amounts.  UST Ex. 61, 28:9 through 33:3.  She recognized her
> signature on some documents but disputed the amounts owed on those
> obligations.

The Court finds that Ms. Iqbal's testimony is not reliable in this regard.  The documents

show that her recall in this regard is faulty.  The documents, UST Exs. 34(l) and 34(m), indicate

the amounts she disputes.

> a. the information on Ms. Iqbal's Schedule C - Property Claimed as Exempt came
> from Debtor Fadi Freij's case.  *See* Case 12-17865, Docket No. 1, Petition, which
> reports that Freij's address is 1312 W. Argyle Street and Docket No. 13, Schedule
> A - Real Property which reports that Debtor Fadi Freij was the primary owner of
> 15217 Waterman Drive with a value of $89,200 and a lien of $37,981.

> b. Question 1 of the Statement of Financial Affairs indicates that Ms. Iqbal
> worked as a phone clerk.  Ms. Iqbal testified that she does not know what a phone
> clerk is, has never worked as one and was shocked as to what was going on.  UST
> Ex. 61, 35:3-21; 38:9-19.

> c. Ms. Iqbal testified that she does not know why her Schedule B indicates that
> she had $200 on West Argyle Street, that no one discussed jewelry with her and
> that no one discussed the value of her clothing with her.  UST Ex. 61, 23:7-22.

The Court however, finds that the U.S. Trustee has not shown that Ms. Iqbal did not

-26-

know the source of the information in her Schedule B. The evidence in this regard is

circumstantial, but is not clear. When asked if Mr. Husain reviewed the Schedule B with her, Ms.

Iqbal explained:

> "Mr. Husain hardly understands Urdu, and he told me all the bills related
> to 6448 North Rockwell property, and that's about it." UST Ex. 61,
> 24:20-22.

The Court finds that Mr. Husain did not adequately review the schedules and Statement

of Financial Affairs with Ms. Iqbal prior to filing those sworn documents with the Court, i.e., that

he was wilfully ignorant of the fact that these documents contained materially inaccurate

information caused by his failure to review them with her.

## II. Duration of Al-Haroon Husain's Practice of Signing Clients' Names to Documents

Mr. Husain indicated that he discontinued signing clients' names to documents on their

behalf after discussing this issue with a representative of the U.S. Trustee's Office in 2012,

"because, though clients had authorized the signing, and acquised [sic] to the signature at the 341

meetings, Respondent felt uncomfortable of the 'grey area'." Disc. Case, Docket. No. 6 -

Answer, ¶ 12.

The deposition testimony of Mohammad Khan, whose case was filed by Mr. Husain on

October 31, 2013, indicates that he gave Husain permission to sign documents on his behalf.

UST Ex. 50, 10:20; 15:7-22. When the U.S. Trustee's trial attorney said that he thought that Mr.

Husain had stopped that more than a year before, he testified at trial that he obtained this

authorization in case he needed it, but that he did not sign any of Mr. Khan's documents. Trial

Tr., 336:15-17. With respect to another 2013 case, Mr. Husain testified that he received

authority to reuse Debtor Farooq Sultan's signatures. Trial Tr., 296:1 through 297:21. In an

incredible explanation Husain said that the authority to reuse Mr. Sultan's signature meant

authority to sign on behalf of Mr. Sultan, not authority to photocopy an existing signature which

Mr. Husain insists he was not aware was occurring. Trial Tr., 296:8-15 through 297:1-8.

At a November 6, 2014 deposition Mr. Husain testified that he had a conversation with

Mr. Steve Wolfe, U.S. Trustee Trial Attorney. UST Ex. 67, 78:19 through 80:3. The

conversation occurred after a Fed. R. Bankr. P. 2004 examination in the *In re Syed Faisal*

*Hussaini* Case No. 12-10086. *Id.,* 79:7-10. Mr. Husain testified that in the conversation:

> "Steve said something to the effect that we don't like that. And I said I
> understand. And not to sign on their behalf even if they give you – well, not sign
> on their behalf."

*Id.,* 79:18-21. The Fed. R. Bankr. P. 2004 examination of Syed Faisal Hussaini occurred on

August 9, 2012; a transcript of that examination is in evidence as UST Ex. 69.

The trial testimony of Mr. Steve Wolfe and Jennifer Toth, a Paralegal Specialist

employed by the U.S. Trustee, indicate that the conversation where Mr. Husain was confronted

about signing his clients' names to documents occurred on July 6, 2011, following the Fed. R.

Bankr. P. 2004 examination of the debtors in *In re Mirza and Sakeena Baig,* Case No. 10-57570.

Trial Tr., 1083:5-18; 1090:9-23; 1099:10 through 1100:11; 1101:14 through 1109:9. *See also*

UST Ex. 72.

The Court finds that the schedules filed in the *Baig* case were materially inaccurate and

improperly executed. Mr. Husain does not dispute having a conversation with Mr. Wolfe after

the examination in the *Baig* case. He says that the conversation did not concern signatures, and

that: "Steve just told me – well, Steve said that we're going to move to dismiss this bankruptcy,

and he suggested I not object to it, and I said I'm not going to object to it at all." UST Ex. 67,

-28-

81:16-19. The Baigs' case was dismissed on July 19, 2011 for unreasonable delay on the motion

of the chapter 7 Trustee; the examinations of the Baigs were conducted on July 19, 2011. Trial

Tr., 1083:13-16.

U.S. Trustee Paralegal Ms. Toth testified credibly that in 2011, Mr. Wolfe told Mr.

Husain to stop "whatever he was doing with signatures and debtors not reviewing their petitions

and schedules, to stop." Trial Tr., 1087:2-6. Mr. Husain's position is that he was first

confronted about signing documents on behalf of clients in August of 2012. However, even if

Mr. Husain is believed on this point, the evidence shows that three declarations were filed on

behalf of Debtors Ashout and Rina Ibraheem in November of 2012, several months after August

of 2012, that do not bear their signatures. UST Ex. 37(f), 37(h), 37(j); UST Ex. 42, 15:5-13,

15:18 through 16:7; UST Ex. 43, 7:21 through 8:10.

### III. Systematic Alteration of Documents to Reuse Signatures and Obtaining Clients' Signatures on Incomplete Documents

Mr. Husain, or Ms. Kaghan, operating under his direction and control, has been accused

of altering dates to reuse debtors' signatures or cause debtors to sign declarations "in blank" so

that they could be dated, used and reused for documents filed later. Mr. Husain does not deny

that this has occurred, but asserts that Ms. Kaghan engaged in this practice without his

knowledge or approval. Disc. Case, Answer, Dkt. No. 6, ¶ 9:

> Complaint ¶ 9: Husain has altered dates to reuse debtors' signatures, or
> caused debtors to sign a Declaration "in blank" so that it could be dated,
> used and reused for documents filed later in the case. The allegation lists
> nine cases where this occurred.
>
> Answer ¶ 9: Kaghan had done so without Attorney's knowledge.
> However, Kaghan did inform client who authorized the modification.
> Client testified, under oath, that was his signature and that all

-29-

modifications were authorized by him. (See attached Exhibit D). Attorney
has instructed Kaghan to cease and desist this procedure.

The answer is the same regarding the other clients cited.

Mr. Husain testified at his deposition that he did not learn that Ms. Kaghan had engaged
in this practice with respect to the cases cited in Paragraph 9 of the Statement of Charges until
after the U.S. Trustee's Amended Motion for Sanctions was filed on January 6, 2014 in the
*Manavski II* case. UST Ex. 67, 63:7-13; 68:18 through 69:7. At trial Mr. Husain changed his
position when he testified that he learned of the practice in the hours following Ms. Kaghan's
August 28, 2013 deposition. Trial Tr., 277:7 through 283:17.

The Court finds that Husain was aware at all relevant times that documents were
systematically altered to reuse debtors' signatures and that debtors' signatures were obtained on
incomplete documents.

### A. *In re Syed Faisal Hussaini,* **Case No. 12-10086**

At his August 9, 2012 Fed R. Bankr. P. 2004 examination Syed Faisal Hussaini was
represented by Mr. Husain. The examination revealed that the schedules and Statement of
Financial Affairs filed in his case were materially inaccurate. UST Ex. 69. After the
examination, on August 17, 2012, amended documents were filed, accompanied by three
declarations filed at Docket Nos. 34, 35 and 37 which appear to bear the same photocopied
signature. UST Exs. 33(f), 33(g), 33(h); UST Ex. 58, 24:8-16. During his December 9, 2014
deposition Mr. Hussaini testified that no one spoke with him about taking a photocopy of his
signature to use for multiple documents and that to his knowledge no one had used a photocopy
of his signature for documents filed in his bankruptcy case. UST Ex. 58, 14:14-24. He later said

that there might have been a discussion about photocopies.  UST Ex. 58, 24:17-24.

When Mr. Husain questioned Mr. Hussaini at the December 9, 2014 deposition following

Mr. Hussaini's statement that "I authorized you to sign on my behalf," Mr. Husain asked:

> Q. And did you authorize me to use your signature?

> A. For this purpose, yes.

UST Ex. 58, 27:13- through 28:1-6.  While Mr. Husain has maintained that he was ignorant of

this practice in 2012, the above shows that he was authorized to use Mr. Hussaini's signature in

2012 as Mr. Hussaini testified that he was positive that he met with Mr. Husain to complete the

documents filed August 17, 2012 and that Ms. Kaghan might have also been present.  UST Ex.

58, 25:3-23.

The Court finds that Husain knew about and reused debtors' signatures in 2012.

## B. In re OF&A Retailers, Case No. 13-23120 and Farooq Sultan and Sara Sultan, Case No. 12-42041

Mr. Husain represented OF&A Retailers, Inc. ("OF&A") in Case No. 13-23120 filed on

June 3, 2013.  He also represented OF&A's principal, Farooq Sultan, and his wife Sara Sultan, in

Case No. 12-42041 filed on October 23, 2012.

In the personal bankruptcy case it appears that photocopied signatures were used for three

declarations filed October 24, 2012 at docket Nos. 5, 19 and 24. UST Exs. 30(c), 30(g), 30(i);

UST Ex. 16(a), ¶ 198; Disc. Case, Docket No. 6, Answer, ¶ 9; and UST Ex. 65, 41:13 through

42:1 where Ms. Kaghan testified that the signatures on the three documents were the same.

In the OF&A bankruptcy case an Amended Statement of Financial Affairs was filed on

July 31, 2013 that appears to reuse Farooq Sultan's signature from the Statement of Financial

Affairs filed on June 3, 2013, with the date changed to indicate that it was executed "7/13/13".

UST Exs. 20(a) and 20(b); UST Ex. 16(a), ¶ 116; Answer, ¶ 9; UST Ex. 65, 24:10 through 28:21,

Trial Tr., 933:21 through 934:2.

Mr. Sultan testified at trial that he did not recall any conversation with Mr. Husain or Ms.

Kaghan concerning permission to use a photocopy of his signature in connection with any of his

bankruptcies. Trial Tr., 911:10-13, 937:22 through 938:3.

Mr. Sultan appeared for a Fed. R. Bankr. P. 2004 examination on December 10, 2013 as

president of OF&A accompanied by Mr. Husain, the entity's bankruptcy counsel.  He initially

testified that he did not recall whether anyone had spoken with him about changing dates on

documents.  UST Ex. 68, 39:17-24.  After being shown documents with altered dates, Mr. Sultan

was asked:

> Q. So did the company's attorney say, would it be alright if I whited-out the date
> and changed it on a document?
>
> A. I mean, I specifically asked Mr. Haroon if there was occasions that he has to
> submit it quickly and all that kind of a thing.  You know, he can do that and I can
> sign– come and sign later just, to save time.

UST Ex. 68, 41:14-21.

Later in the examination Mr. Sultan expanded on his understanding with Mr. Husain with

respect to signing documents:

> Q. So did you ever give someone permission just to use your signature from prior
> documents onto new documents?
>
> A. I mean, he–yes, I think I gave him an authority also if some signature is to be
> done for me, I mean, he can sign it.
>
> Q. Do you know when?

-32-

By Ms. Silver:

Q. Not him signing your name, him using your signature that you had previously signed. Like, for instance, if you got this (indicating) with no date and signed it, did you give him permission to use this signature later maybe to date it that way? I mean that's the question.

A. I think I mean if there is–it's like a plain vanilla thing and it doesn't hurt me, I think I did say that it could be used.

By Mr. Snell:

Q. Do you recall when you would have said this?

A. No. That specific memory is not . . .

Q. And what do you mean by a plain vanilla thing?

A. I mean, any complicated which requires my – for example, if I owed somebody only 5,000 and he puts 50,000, that's – that's not plain vanilla, you know, that puts me into an additional burden of 45,000 loan. That kind of thing. But if it is a form which is apart of the document and all that, if there is no misinformation or disinformation in that, yes, he could sign. I mean, he could use that.

By Ms. Silver:

Q. But you relied on him as to whether or not it was a plain vanilla or something more complicated

A. He's my attorney. I have to rely on my attorney.

. . .

Q. Yes. So it was your understanding that that was okay with documents filed in the bankruptcy case.

A. If there is no misrepresentation of facts – I mean, I'm not a legal expert, so I don't want to commit myself or anything, you know. It's going on record. If it is not going to hurt anything, and it's just part of the system, yes, he was allowed to do that.

Q. Why did you think that was allowable?

A. For convenience of saving time. I live far out from his office and all that. And his timing, my timing, and all those things. That was all nothing but convenience,

-33-

I would say.

Q. But you understand that these are sworn documents, right?

A. No. I am not - - I am not sure I understand. I have to be honest.

Ms. Silver:

Here. This, what it says right above your signature, is I declare under penalty of perjury. That's that word we talked about earlier; that I have read the answers contained in the foregoing statement of financial affairs and – it's hard to read upside-down – and any attachments thereto and that they are true and correct. And by signing this, you made this oath. Did you realize that when you signed the papers?

A. Honestly, no.

UST Ex. 68, 43:2 through 45:24.

### C. In re Shahid and Erum Ahmed, Case Nos. 12-31079 and 12-43056

Mr. Husain filed two bankruptcy cases on behalf of Shahid and Erum Ahmed. The 12-31079 case was filed on August 4, 2012. It was dismissed for failure to file required documents on September 5, 2012. Case No. 12-43056 was filed on October 30, 2012. The petition in the second case does not disclose the existence of the first case. Case 12-43056, Dkt. No. 1, p. 2. Mr. Husain does not dispute the allegation that the Debtors' signatures from the first case were reused in initiating the second case. Answer to Disciplinary Charges, Case 14-90007, ¶ 9. Ms. Kaghan has testified that the clients authorized having their signatures reused. UST Ex. 65, 28:22 through 35:4. The Court finds that Mr. Husain reused the Debtors' signatures in initiating the second case.

Based on Ms. Kaghan's testimony and the Answer at ¶ 9, the Court finds that the Exhibit D to the Petition that Husain filed in the second case reused Mr. Ahmed's signature from the

Exhibit D filed in the first case with the corresponding date modified. *See* UST Exs. 22(b) and 21(b).

On January 17, 2013, Erum Ahmed filed a Petition for Dissolution of Marriage in the Circuit Court of Cook County, Illinois, Case No. 2013-D-230025. UST Ex. 16(a), ¶ 126; UST Ex. 55, 11:12. Mr. Husain represented Mr. Ahmed in the divorce case. UST Ex. 16(a), ¶ 127; UST Ex. 67, 59:24.

Mrs. Ahmed did not know that the first case had been dismissed. Trial Tr., 486:13-21. She did not recall anyone speaking with her about photocopying and reusing her signature or Mr. Husain (or anyone on his behalf) explaining bankruptcy documents to her. Trial Tr., 482:1 through 483:1; UST Ex. 55, 15:10 through 17:14.

Mr. Ahmed initially testified that he had filed only one bankruptcy case in his lifetime. When shown a document from his second case he testified: "It could be, like, probably, like, a delay in something, so Al must have asked me, you know, when he asked, like, to refile the case, and I must have told him yes." UST Ex. 57, 23:21; 41:23 through 42:2.

Mr. Ahmed testified that no one asked about signing his name to documents for him. Trial Tr., 851:3-15. On cross-examination Mr. Ahmed acknowledged that he may have consented to Mr. Husain using a photocopy of his signatures from documents in the first case with revised dates for the second case:

> Q. Sure.
>
> You're okay with the fact that Al used your first documents in your first bankruptcy and changed the dates on them and used them for the second bankruptcy; isn't that correct?
>
> A. I don't --

The Court: I can't hear you.

Mr. Panagoulias: Speak up so the judge can hear you.

The Witness: I was okay, as long as he explained to me that it's not going to affect my bankruptcy. So I must have said okay.

Trial Tr., 879:16 through 880:1.

On redirect examination Mr. Ahmed testified that he was uncertain about the reuse of his

signature:

> Q. And Mr. Panagoulias asked you about giving Mr. Husain authority to reuse your signature and photocopy it?
>
> A. He asked me, like, if I was going to file another case. So I said, okay. You know, he explained to me that he's not willing to - some documents were missing, and then we are going to file another case. So I said, okay.
>
> Q. Did he talk to you specifically about photocopying your signature and reusing it?
>
> A. I don't remember that.
>
> Q. Has anyone specifically spoken with you about photocopying your signature and reusing it?
>
> A. I don't remember.

Trial Tr., 887:6-20.

The documents filed in the Ahmeds' second bankruptcy case were materially inaccurate.

The inaccuracies include:

> a. the Petition omitted the existence of the first case.
>
> b. Schedule A omitted a parcel of real property at 6429 S. Carpenter St., Chicago,
>
> IL that Mr. Ahmed owned on the petition date. UST Ex. 22(f). On October 5,

2012, after the first case was dismissed on September 5, 2012 and approximately

three weeks prior to the filing of the second Petition, the mortgagee filed a

Satisfaction of Mortgage relating to the property.  UST Ex. 22(g), UST Ex. 57,

79:21 through 82:14.

c. Mr. Ahmed also owned real property at 6818 Ada Street, Chicago, IL on the

petition date that was not disclosed on Schedule A. UST Ex. 22(e); UST Ex.

16(a), ¶ 142; Trial Tr., 863:8-13, 865:18 through 866:5.

d. Mr. Ahmed also rented a property located at 5455 Sheridan Road, #1809,

Chicago, IL to a tenant named "Joe" on the petition date.  Trial Tr., 870:2 through

872:22, UST Ex. 22(c), pp. 21, 23-24.

The Court finds that Mr. Ahmed did not know why the Carpenter and Ada Street

properties were omitted form Schedule A. Trial Tr., 862:12-14, 869:13-17.  Mr. Husain's

knowledge of the Ada Street property was confirmed on December 6, 2012 when he filed an

amended Schedule D reciting two mortgages against the Ada Street property.  UST Ex. 22(d), p.

2.  No amended Schedule A was ever filed.  *See* CM-ECF docket for Case No. 12-43056.

The Court also finds that Husain did not sufficiently review the bankruptcy documents

with the Ahmeds before they were filed.  Husain did not meet or speak to Mrs. Ahmed until the

meeting of creditors.  UST Ex. 16(a), ¶ 131; Trial Tr., 480:14 through 481:2.   Had Mr. Husain

sufficiently reviewed  the documents with the Ahmeds, instead of reusing their signatures, the

omitted information could have been included in the schedules.

The Court also finds that Mr. and Mrs. Ahmed's names are signed on the schedules,

attesting to the accuracy of the contents under penalty of perjury, but that dates next to their

-37-

names are Ms. Kaghan's handwriting.  Trial Tr., 860:16-22.  Ms. Kaghan testified that the

schedules the Ahmeds signed would have been signed prior to their completion.  Trial Tr.,

978:21 through 979:3.  The Court so finds.  This is consistent with Husain's routine practice of

having clients sign blank documents at the outset of a case, before the documents are completed.

This is illustrative of the kind of harmful, deceptive conduct that Husain exposes his clients to,

putting them at risk of losing their discharge under 11 U.S.C. § 727(a)(4) for false oaths on their

schedules.

Mr. Ahmed was able to quickly recall the missing properties when questioned at his

deposition and at trial.  The Court finds that Husain is primarily at fault for the filing of the

materially inaccurate schedules.

### D.  In re Aaron Rodriguez, Case No. 13-26869

Mr. Husain filed the above case on behalf of Mr. Rodriguez on July 1, 2013.  Mr.

Rodriguez did not testify at trial; however, he was deposed herein on December 3, 2014.  Ms.

Kaghan testified that certain declarations were reused.  UST Ex. 65, 35:5-18.  The Court finds

that in Mr. Rodriguez's case the same photocopied signature was used for declarations filed

October 8, 2013, at Docket Number 25, UST Ex. 23(a) and on October 10, 2013, at Docket No.

30, UST Ex. 23(c).

The declaration filed on October 10, 2013 appears to be the same as another declaration

filed on October 8, 2013 at Docket No. 27, UST Ex. 23(b), with the middle digit of the date

altered from an "8" to a "10".  Ms. Kaghan confirmed this at trial.  Trial Tr., 979:4 through

980:12.  The Court finds that the October 8, 2013 declaration was also reused and filed as Docket

No. 27, UST Ex. 23(b) and 23(c).

Mr. Rodriguez was asked about giving Mr. Husain or Ms. Kaghan permission to use photocopies of his signature.

> Q. Now do you remember discussing with Al and/or Marilyn whether or not you gave them permission to use photocopies of your signature in filing amendments to the new documents?
>
> A. When we did – when we did the re-amendments?
>
> Q. Yeah.
>
> A. Yeah.
>
> Q. Okay. Did you give them permission?
>
> A. Marilyn. Yeah, Marilyn.
>
> Q. Okay. So you gave Marilyn permission to use photocopies of your signature in doing these amendments; is that correct?
>
> A. Yeah, I did give her permission for the amended – because we were trying to get the amendments, push the amendment.
>
> Q. Okay. And before you got the amendments, you did look at the documents?
>
> A. Yes.

UST Ex. 51, 34:20 through 35:24.

Mr. Rodriguez recognized that his signature crossed a printed portion of the form at the same point on each declaration but stated that he did not know whether the documents were photocopies.  UST Ex. 51, 34:3-15.  He recalled Marilyn asking to use his signature; he agreed. UST Ex. 51, 36:5-20.

Mr. Husain's attorney remarked:

Mr. Panagoulias: Regardless, it was done with your consent; is that correct?

The Witness: Yes.

Id., 36:5-20.

The Court finds that a debtor can not consent to his or her attorney's total disregard of federal law and Mr. Husain has offered no authority that indicates otherwise.

The Court finds that Mr. Husain used photocopies of Mr. Rodriguez's declarations when filing them.

### E.  In re Baligh Abutaleb, Case No. 13-30842

Mr. Husain filed the above case on behalf of Mr. Abutaleb on August 1, 2013.

The Court finds that an amended Statement of Financial Affairs filed on October 2, 2013 reused Mr. Abutaleb's signature from an original Statement of Financial Affairs filed on August 6, 2013, according to the testimony of Ms. Kaghan.  *See* UST Ex. 65, 35:19 through 37:1.  She also testified that declarations filed in Mr. Abutaleb's case used his photocopied signature.  *Id*; Trial Tr., 981:18 through 986:2.  The Court acknowledges that Mr. Abutaleb's testimony was not clear on this point, but he said that he spoke to Mr. Husain about photocopying and reusing his signature before the case was filed.  UST Ex. 46, 10:6-24.

No bank accounts are listed on Mr. Abutaleb's Schedule B.  However, he testified at trial that he had an account at Chase when he filed for bankruptcy, but then expressed some uncertainty.  Trial Tr., 832:23 through 834:10.  Had Mr. Husain reviewed the documents with Mr. Abutaleb before filing them, there would be less uncertainty about what was told to him and whether the Chase account existed pre-bankruptcy.

Mr. Abutaleb testified that he gave Mr. Husain an authorized signature and that he may

not have reviewed an amended Statement of Financial Affairs filed on October 2, 2013 before it

was filed:

> A. Uhm, you know, I'm telling you, for the bankruptcy, there was so many, many, many papers, and I really have all the trust for Mr. Husain, okay?
>
> If something needed to be, you know, done for the bankruptcy, I just agreed to – you know, kind of blindly to Mr. Husain because I know him for a long time, to take care of this.
>
> But I'm not sure which one I filed, which one is not. You know, I told him I want to do a bankruptcy, and, I mean, he take care of the whole thing. He said sign here, sign here, and then I give him a authorized signature, and that's about it, you know.
> Q. So then this –
>
> A. So – go ahead.
>
> Q. The amended Statement of Financial Affairs filed on October 2, 2013, a couple months after you filed bankruptcy, did you review that document before it was filed?
>
> A. I probably didn't. I probably didn't. And I probably – yeah.

UST Ex. 46, 30:2-23.

### F.  In re Saghir Badani, Case No. 13-33835

Mr. Husain filed the above case on behalf of Mr. Badani on August 26, 2013.

Ms. Kaghan testified that six declarations filed in Mr. Badani's case bore his reused

signature.  UST Ex. 65, 36:13 through 37:1.  The Court so finds.

Mr. Badani testified:

> A. [ . . . ] And then he called me once, and I need to, you know sign some papers, and I couldn't. I said: You know what? Go ahead and sign them on behalf of me or sign them and you do it. And he said: Okay. Because I know him for a long time so . . .
>
> Q. Did anyone talk to you about photocopying your signature and reusing it?

-41-

A. Nobody talked about that.

UST Ex. 45, 13:5-14.

Mr. Badani testified that the signature on his schedules bears his handwriting but that the corresponding date, "9/12/13", is not his handwriting. UST Ex. 45, 14:1-18. Both his original Schedule B and his amended Schedule B showed that he did not have bank accounts. *See* Docket No. 13, p. 2 - original Schedule B and Docket No. 23 , p. 1- amended Schedule B. Mr. Badani denied having a bank account as of the petition date at one point in his testimony. UST Ex. 45, 16:19 through 17:17. However, at another point he testified that he had accounts at both Chase and Bank of America. UST Ex. 45, 10:22 through 11:12.

Mr. Badani did not remember seeing the following documents prior to them being filed:

a. Schedule I filed September 24, 2013, UST Ex. 25(b);

b. amended Schedule D filed September 25, 2013, UST Ex. 25(d); and

c. amended Schedule F filed March 4, 2014, UST Ex. 25(j).

UST Ex. 45, 23:12 through 25:3.

Mr. Badani testified that the declarations appeared to be copies and that he authorized Mr. Husain to make copies of his signature and to sign his name:

A. If I'm not there, and if he needs to use my signatures, he can make copies of this and make my signature, provide my signature, or he can sign it.

UST Ex. 45, 30:14-17.

The Court finds that Mr. Husain reused Mr. Badani's signatures as part of his pattern of altering documents to reuse signatures.

**G.  In re Istiyak Patel and Azra Patel, Case No. 13-37122**

-42-

Mr. Husain filed the above case on behalf of the Patels on September 20, 2013. They did not testify at trial, however, they were deposed herein on November 18, 2014.

According to the testimony of Ms. Kaghan the same photocopied signatures were used for three declarations filed November 8, 2013 and November 11, 2013. UST Ex. 65, 37:2-10; UST Ex. 16(a), ¶ 181; Answer, ¶ 9. The Court so finds.

Mr. Patel testified that he did not know that his signature was going to be photocopied and reused. UST Ex. 47, 29:7-21. When asked whether he knew that changes had been made to the documents originally filed in his bankruptcy case, he explained:

> A. Actually, yes. He called me regarding that also. And he explained that it was a mistake by his secretary. And that's why he changed the paperwork, and that's what it is.
>
> Q. Did you have to go in and look at it before it was filed?
>
> A. I didn't – I trust him because he's my – he was my attorney. So I completely trust with him because he knows the legal rules and regulations because I don't know anything about what I have to do and whatnot.

UST Ex. 47, 32:1-12.

Mrs. Patel was asked whether Mr. Husain or anyone from his office spoke with her about photocopying her signature, and she recollected that "[l]ike there was something about amendment, like, discussion going on, but I – I don't, like, recall, like, photocopy, you know." UST Ex. 48, 19:20-23.

The Court finds that Mr. Husain used photocopied signatures on declarations filed on behalf of the Patels and that such improper actions are not excused by the clients' consent. In his

Proposed Findings Mr. Husain makes the following admissions:

> Paragraph 166. "In this case Patel recalls signing every document in his bankruptcy, and he believes none of the documents are photocopies . . . Respondent admits that the items claimed by the Trustee as to the Patels in Case No. 13-37122 are photocopies, copies with their consent my [sic] Ms. Kaghan, without Mr. Husain's knowledge."

> Paragraph 167. Trustee then admits that Mrs. Patel simply does not recall the conversation; and that the Debtor's allowed Respondent (or Respondent's office) to amend his bankruptcy.

Disc. Case, Mr. Husain's Proposed Findings, Docket No. 39, ¶¶ 166 and 167.

### H. Mohammad Khan and Saima Khalid, Case No. 13-42658

Mr. Husain filed the above bankruptcy case on behalf of Mohammad Khan and Saima Khalid on October 31, 2013. The debtors did not testify at trial, however, they were deposed herein on December 2, 2014.

Based upon a review of UST Exs. 27(b) and 27(c), the Court finds that the date was modified on their original Statement of Financial Affairs, and that after being marked "amended" it was reused and filed as the amended Statement of Financial Affairs on November 14, 2013. UST Ex. 16(a), ¶ 186. The Court also finds that their photocopied signatures were used for declarations filed November 14, 2013 at Docket Nos. 16, 18, and 20, but not 31. UST Exs. 27(d), 27(e), 27(f), 27(g), 16(a) ¶ 187, Answer ¶ 9. Ms. Kaghan testified that, except for the item at Docket No. 31, all writing on those pages was hers, except the actual signatures. UST Ex. 65, 37:11 through 39:23.

Mr. Khan testified that he knew that his signature would be photocopied and reused. Mr. Husain called him before the bankruptcy case was filed and informed him that he (Mr. Kahn) had forgotten to sign a document. He gave Mr. Husain authority to sign a document on his behalf.

UST Ex. 50, 15:7 through 16:1-3, 43:6-16. When shown Declarations and the amended

Statement of Financial Affairs containing photocopied signatures, he testified that he did not

know whether they were photocopies. *Id.,* 33:3-12, 38:23 through 39:3.

Ms. Khalid testified that her husband, Mr. Kahn, handled most of the bankruptcy related

matters with Mr. Husain and Ms. Kaghan. UST Ex. 49, 15:7-9, 17:7-10. She was unsure of the

source of the $200 cash, $600 for "Furniture, TV, Computer," and $200 in wearing apparel

valuations on their Schedule B. *Id.,* 15:10-23, 16:24 through 17:3. While Schedule B indicates

"none" on lines 5 and 7, Ms. Khalid testified that she did have books and "artificial jewelry" at

the time of filing. *Id.,* 16:22 through 17:12. Mr. Khan did not recall any discussion about

jewelry and that his wife has "a couple of rings and stuff like that." UST Ex. 50, 28:6-11.

At first Ms. Khalid testified that she did not understand that her signature would be

photocopied and reused on five documents, but later testified that she gave Husain authority to

use her photocopied signature more than once. UST Ex. 49, 10:18 through 12:4, 24:1-13.

The Court finds that Mr. Husain photocopied and reused the signatures of Mohammad

Khan and Saima Khalid on documents filed in their bankruptcy case at Docket Nos. 5, 16, 18 and

20.

### I.  In re Syed M. Hussain and Affaf Baig, Case No. 13-48122

Mr. Husain filed the above bankruptcy case on behalf of Syed M. Hussain and Affaf Baig

on December 17, 2013. According to the testimony of Ms. Kaghan, photocopied signatures from

an original were used for two declarations filed on February 3, 2014 at Docket Nos. 16 and 18.

Trial Tr. 994:24 through 996:20; UST Ex. 65, 39:24 through 41:12.

The Court finds that Mr. Husain filed documents in the Hussain/Baig case reusing their

-45-

signatures, again in violation of federal law that requires debtors to sign documents under penalty of perjury.

### J.  In re Fareedun Ansari, Case Nos. 14-02434 and 14-17200

Mr. Husain filed bankruptcy Case No. 14-02434 (*"Ansari I"*) on behalf of Fareedun Ansari on January 27, 2014.  He filed bankruptcy Case No. 14-17200 ("*Ansari II*") on behalf of Fareedun Ansari on May 6, 2014 after the first case was dismissed for failure to file documents. The *Ansari I* case included a Declaration of Electronic Filing that did not indicate a case number or the date on which it was signed.  *See* Case No. 14-02434, Docket No. 4; UST Ex. 39(b).  The Declaration of Electronic Filing filed in *Ansari II* at Docket No. 3 appears to be identical to the Declaration of Electronic Filing in *Ansari I*.  The only difference is that the Declaration in *Ansari II* is dated; it does not indicate a case number and each document has the same squiggle about 1.5 inches to the right of where it indicates that the matters are Chapter 7 cases.  *See* Case No. 14-02434, Docket No. 4 and Case No. 14-17200, Docket No. 3.

The *Ansari II* petition does not disclose the existence of the *Ansari I* case.  *See* Case No. 14-17200, Docket No. 1, p. 2; UST Ex. 40(a), p. 2.

The *Ansari II* petition appears to be a copy of the *Ansari I* petition with dates added to Mr. Husain's signatures on pages 2 and 3 as well as a second dated signature added for Mr. Ansari on page 3.

The Court finds that the declaration filed by Husain in the *Ansari II* case is a photocopy of the *Ansari I* declaration with "5/01/14" added below the signature.

Mr. Husain states in his Proposed Findings at Paragraph 179, in part, when referring to the Ansari case, that Ms. Kaghan erred by having Mr. Ansari date  5/1/14 to the previous

-46-

declaration; that Ms.Kagahn believed Ansari had signed a new declaration and simply forgot to

add the date and that he takes responsibility for the actions that came out of his office.  Disc.

Case, Docket No. 39, ¶ 179.

## IV.  Material Inaccuracy of Schedules and Other Filed Documents

The evidence illustrated many instances where Mr. Husain filed materially inaccurate and

improperly executed documents on behalf of his clients.  The UST Ex. 19(a) summary chart is

some indication that Mr. Husain is abjectly indifferent to the factual accuracy of the documents

he files with the Court.

Exhibit 19(a) is a summary of all Schedules B - Personal Property Mr. Husain has filed

since January 1, 2011, in consumer bankruptcy cases.  If true, it illustrates an alarming pattern.

Of the 110 Schedules B that he has filed since January 1, 2011, 93 include the same amounts of

cash ($200), household goods ($600) and clothing ($200).  One hundred and six (106) of the 110

Schedules B report the debtor as having $200 on the petition date.  However, the Court was not

presented with testimony from each of the debtors whose cases are summarized.  For that reason

the Court can not find that the Schedule Bs filed by Mr. Husain are unreliable and incredible.

In addition, Mr. Husain testified that the valuations in the Schedules B originated with his

clients and that he never suggested values to them.  Trial Tr., 58:1 through 69:20, 60:10-15.  Ms.

Kaghan's testimony echoed this position.  Trial Tr., 1016:7-12; 1018:12 through 1019:10;

1020:18-25.

The Court does not believe the testimony of Mr. Husain and Ms. Kaghan regarding the

valuations.  However, this is a situation where the debtors would have to give evidence on this

issue to justify the requested finding that Mr. Husain, in this instance, routinely files inaccurate

-47-

documents with the Court.

Considering the record to date, however, the Court can find that Mr. Husain generally does not try to submit accurate information in the documents he files on behalf of his clients. His position appears to be that the creditors' meetings are held so that the trustees can critique the case filings which he later amends if a trustee objects.  A cursory review of cases he files shows that many schedules and statements of financial affairs get amended.

In the case of Mr. Haider Mr. Husain stated:

> There is a certain reliance when we do a 341 meeting with a case trustee that they're going to show all the properties of the individual. If there's any objection or if the individual saying something is missing, which can happen in a case, then we do an amendment.

> I believe in Mr. Haider's case, he didn't object to the fact that he didn't see a car there. Now, it might have slipped his mind and actually got misfiled in Ms. Iqbal's file. But I don't think there's an inadequacy here. It's just a mistake. *See* Haider Case No. 12-17531; Trial Tr., 461:20 through 462:6.

Mr. Husain should not wait for trustees or creditors to point out problems with his clients' cases. He has a duty to review documents with his clients before filing them. Failure to do so results in delay and puts his clients at risk of being denied a discharge or being investigated under various criminal laws for making material misstatements.  A 2004 Honda Civic automobile was erroneously placed on Ms. Iqbal's Schedule B when it should have been listed on another debtor's Schedule B. Each client was put in jeopardy due to Mr. Husain's failure to adequately review documents with his clients.   Having them reviewed and signed by clients before filing should dramatically reduce having parties in the bankruptcy system being misled by inaccurate documents.

Mr. Husain attempted to convince the Court that some of his clients are not bright

-48-

enough to give him accurate information:

> Again, we reviewed with him many times.
>
> Some of my clients, again, they're not the – would not be– well, how should I say it? They're not the brightest people, so we have to constantly try to review it again and again with them to make sure we get it right. It may not always be perfect, which is why if we see something wrong afterwards, we do an amendment.

Mr. Husain was referring to Debtor Syed Faisal Hussaini whose schedules did not include an automobile and a retirement account. Mr. Husain testified that he signed that debtor's documents. Trial Tr., 237:19 through 243:25.

The Court finds that this contention regarding his clients' intelligence is not an acceptable excuse for routinely filing inaccurate documents on their behalf.

## V. Marilyn Kaghan

Ms. Kaghan's testimony carries no weight. She has no credibility. She testified at trial that Mr. Husain was not aware that she photocopied and reused debtors' signatures. Trial Tr., 956:3 through 958:2. She testified that she acted alone in photocopying and reusing signatures, but she was unable to recall details relating to that practice:

> a. she did not recall how the practice started: Trial Tr., 956:9;
>
> b. she did not recall when the practice started: Trial Tr., 956:12;
>
> c. she did not recall who developed the idea to start the practice: Trial Tr., 956:19-24;
>
> d. she did not recall how many signatures were reused: Trial Tr., 956:25 through 957:6;
>
> e. she could not recall when the practice ended: Trial Tr., 957:9-11;
>
> f. she did not recall why the practice ended: Trial Tr., 1000:8-13;

g. she did not remember the day Mr. Husain discovered the practice: Trial Tr., 958:3-9;

h. she did not recall ever having a conversation with him about the practice: Trial Tr., 958:6-13; 999:16 through 1000:4;

i. she did not recall speaking with the following debtors about photocopying or reusing their signatures: Syed Faisal Hussaini: *Id.,* 962:7-24; Farooq Sultan: *Id.,* 966:8; Erum Ahmed: Id., 976:11-13; Shahid Ahmed: *Id.,* 976:14-16; Aaron Rodriguez: *Id.,* 980:13-15; Baligh Abutaleb: *Id.,* 982:19; and Saghir Badani: *Id.,* 989:11-14;

j. she was unable to say whether Farooq Sultan, Aaron Rodriguez, Istiyak Patel and Azra Patel knew that their signatures were being photocopied and reused: *Id.,* 971:24 through 972:2; 980:19-22; 991:25 through 992:14;

k. she could not remember any cases where debtors knew that their signatures were going to be photocopied and reused.

During cross-examination Ms. Kaghan's memory changed in many respects:

a. she testified that she had Farooq Sultan's permission to reuse his signature but she does not recall which document she could reuse: Trial Tr., 1039:22; 1063:6-8;

b. she testified that Mr. Husain prohibited her from accessing the office computer due to her reuse of signatures: Trial Tr., 1054:13 through 1055:13;

c. she testified that Mr. Husain told her twice "not to submit signatures:" Trial Tr., 1056:8-10

d. she testified that she informed each affected client that she was reusing their signature. Trial Tr., 1057:4-15.

On redirect examination Ms. Kaghan pretended not to remember portions of her testimony from earlier in the day. Trial Tr., 1062:12, 1068:11.

The Court does not believe Ms. Kaghan's testimony. It is hard to believe that clients gave Mr. Husain authority to reuse their signatures without documentation indicating such a grant of authority and its scope.

With respect to a purported conversation between Mr. Husain and Ms. Kaghan, the Court notes that she claims the first conversation occurred face-to-face in his office. Trial Tr., 1070:24 through 1077:7, while he claims the conversation occurred by telephone the day after her deposition. Trial Tr., 709:11 through 710:1.

The Court does not believe Ms. Kaghan's December 16, 2014 deposition testimony that she altered dates to reuse signatures and caused clients to sign documents in blank without Mr. Husain's knowledge. At one point she said that he did not know; at another point she could not recall whether he knew. UST Ex. 65, 23:1 through 24:4.

The Court notes that Mr. Husain represented Ms. Kaghan at an August 28, 2013 deposition in the *Manavski II* case. UST Ex. 64. During the December 16, 2014 deposition and at trial Ms. Kaghan was represented by Attorney James Pittacora, a representation arranged by Mr. Husain. UST Ex. 65; Trial Tr., 1021:4 through 1023:20.

Oddly, following Ms. Kaghan's supposedly extensive unauthorized conduct her employment was not terminated; she left to pursue work elsewhere. Trial Tr., 942:20 through 947:5.

## VI. The Persistence of Al-Haroon Husain's Misconduct

On May 23, 2013, the U.S. Trustee filed a Motion to Impose Sanctions Under 11 U.S.C. § 105 and Fed. R. Bankr. P. 9011 in the *Manavski II* case, 13-11728 (the "Original Sanctions Motion"), complaining of the alteration of documents and reuse of signatures in Hristo Manavski's second bankruptcy case. UST Ex. 11(a). The problems complained of include:

> a. pages 2 and 3 of the second petition appeared to be the same pages of the first petition with dates next to Mr. Manavski's and Mr. Husain's signatures altered to recite a new date;

b. the Declaration Concerning Debtor's Schedules filed with the schedules in the second case appeared to be an altered version of the same document filed with the schedules in the first case;

c. the Statement of Financial Affairs filed in the second case appeared to be precisely the same document filed in the first case.

The Court finds that Mr. Husain continued to file improperly executed documents after the Original Sanctions Motion was filed, including in the following cases discussed herein:

a. *In re OF&A retailers, Inc.*, Case 13-23120;

b. *In re Aaron Rodriguez,* Case No. 13-26869;

c. *In re Baligh Abutaleb*, Case No. 13-30842;

d. *In re Istiyak Patel and Azra Patel*, Case No. 13-37122;

e. *In re Mohammad Khan and Saima Khalid,* Case No. 13-42658;

f. *In re Syed M. Hussain and Affaf Baig*, Case No. 13-48122 and

g. *In re Saghir Badani,* Case No. 13-33835.

Answer, ¶ 10; UST Ex. 65, 24:10 through 42:1.

On January 6, 2014, the U.S. Trustee filed an Amended Motion to Impose Sanctions in *Manavski II* ("Amended Sanctions Motion") alleging, *inter alia,* that Mr. Husain's reuse of signatures and modification of bankruptcy documents was not limited to the *Manavski II* case, but was part of a course of conduct that persisted after the Original Sanctions Motion was filed. UST Ex. 11(c).

Mr. Husain's January 27, 2014 Response to the Amended Sanctions Motion did not assert that Mr. Manavski was a truck driver who drove trucks between Cook and DuPage Counties and that Ms. Kaghan had been altering signatures without his knowledge; paragraph 52 indicates that

signatures were utilized with the clients' approval; Mr. Husain does not deny knowing that this

was being done. He answered paragraph 75 stating that Mr. Manavski "was mobile to

anywhere." Case No. 13-11728, Docket No. 59. During his deposition conducted November 14,

2013, Mr. Husain, in discussing the *In re Ahmed,* Case No. 12-43056, explained the rationale for

modifying dates and reusing signatures:

> Why make the guy go through the whole hassle again? Here's the old one. White
> it out. Put down your new date. File [sic] it in. It's what he wants and it's not
> falsifying anything. It's the same thing that he wants. Exhibit I, p.22, lines 12-16.
> That exhibit is also UST Ex. 66, 22:12-16.

Mr. Husain stated in response to being accused of modifying previously executed

bankruptcy documents:

> Answer: Attorney denies Trustee's statement in Paragraph 52 insofar that any
> signature, new or old, are utilized under the authority or approval of the debtor.
> Trustee has asked other clients of Attorney and said clients have verified this with
> Trustee. Trustee intentionally fails to mention to the Court.

Case No. 13-11728, Response to Amended Motion for Sanctions, Docket No. 59, ¶ 52.

Here Mr. Husain accuses the U.S. Trustee's Office of intentionally failing to inform the

Court that he signed documents on behalf of his clients and reused their signatures with the

clients' consent. *See also* Mr. Husain's Proposed Findings, ¶ 165:

> [t]he Trustee intentionally ignores this evidence, willfully placing Mr. Husain
> into harms way. It is shocking that the Trustee continues to try to infer mal intent
> on the part of Mr. Husain, while intentionally not being truthful with this Court.

The U.S. Trustee has not intentionally failed to inform the Court that Mr. Husain acted with his

clients' consent. Mr. Husain is responsible for presenting his consent/authorization defense, not

the U.S. Trustee. In any event, consent is not a defense. Mr. Husain's clients can not waive or

nullify federal law.

At Paragraph 155 of his Proposed Findings, Mr. Husain accused the U.S. Trustee of

trying to intimidate and bully a witness:

> [a]t the end of Mr. Ahmed's testimony, the Trustee, being frustrated with Mr.
> Ahmed's answers, warned him of fact of filing documents under, "penalty of
> perjury," trying to intimidate and bully the witness, where the witness admitted
> that he could not recall whether he had a conversation with Mr. Husain regarding
> anything relating to penalty of perjury. Trial Tr. 887:21-888:21. When asked on
> re-cross, the witness agreed that just because he could not recall a conversation
> does not mean it did not happen. Trial Tr. 890:8-14. Of course, the Trustee
> objected, with no legal basis. Trial Tr. 889:10. In its brief, the Trustee
> conveniently ignores this fact and offers to this Court that Mr. Ahmed in fact did
> know his signatures were being reused. This is significant in that this
> demonstrates the Trustee is being intentionally deceptive, by providing the Court
> with only a partial picture of what the evidence showed, a pattern that has been
> consistent throughout this matter.

Disc. Case No. 14-90007, Docket No. 39, ¶ 155.

The U.S. Trustee did not bully Mr. Ahmed.  Mr. Ahmed was asked if Mr. Husain

explained that documents were to be signed under penalty of perjury.  Mr. Ahmed answered yes,

and stated that being an accountant, he knew that other government forms are to be signed under

penalty of perjury.  Trial Tr., 887:21 through 888:17.  This does not amount to bullying.  The

U.S. Trustee's questions were relevant and reasonable.  Mr. Husain wants to prevent and

condemn inquiry that does not suit his purposes.

When accused at Paragraph 61 of not including a notation next to signatures to indicate

that anyone other than the debtors signed the documents, Mr. Husain claims not to recall certain

matters, but does not deny this.  Nor does Mr. Husain deny not obtaining written authorization

from a client before signing that client's name to a document.  Case No. 13-11728, Response to

Amended Sanctions Motion, Docket No. 59, ¶ ¶ 61, 63.

Judge Doyle admonished Mr. Husain at a status hearing on the Amended Sanctions

Motion:

> This whole idea of filing things for clients and altering the dates and all of that,
> I'm just going to tell you, maybe I have to set this for an evidentiary hearing.
> There are a lot of problems here. There seems to be a lot of problems in how you
> are practicing law in the bankruptcy field. The idea that you just sign some
> client's name on documents because they don't feel like coming into the office
> because it's not convenient for them, without putting some indication that have
> you have authorization and, you know, your initials or something? That's a real
> problem. I was shocked when I read that. You just signing people's names. It's
> not them. Now you say, well, I got a phone call from them. You're not
> documenting in any way. That is a real problem. And I was really, really surprised
> about that.

UST Ex. 70, 11:18 through 12:9.

Mr. Husain admitted that he reused Mr. Manavski's signature by updating dates:

> And basically what we're stating is that he signed it. And then he filed a new
> bankruptcy, we contacted him and we said, here's the new bankruptcy and the
> updated dates on it. But the signature is the same and we reviewed everything
> within the same –

*Id.,* 7:8-19.

Mr. Husain first asserted that Ms. Kaghan had been reusing signatures without his

knowledge (but with the clients' permission). UST Ex. 11(d), ¶¶ 55-56. It was in that Amended

Response that Mr. Husain first asserted that Mr. Manavski was a truck driver who traveled back

and forth between DuPage and Cook Counties. *Id.,* pp. 23-24.

The Statement of Charges at paragraph 11 alleges that on March 4, 2014, Mr. Husain

filed two declarations in the *In re Saghir Badani,* Case No. 13 B 33835, that contained signatures

identical to those in declarations filed as far back as September 12, 2013. Mr. Husain admits this

occurred but asserts that Ms. Kaghan filed the reused signatures without his knowledge. He also

stated that he had instructed Ms. Kaghan to cease and desist from reusing signatures before these

documents were filed and that he "reasonably believed that Kaghan adhered to Respondent's

instructions."  Disc. Case, Docket No. 6, Answer, ¶ 11, p. 6.

On May 6, 2014, Mr. Husain filed the *Ansari II* petition and *Ansari II* declaration, reusing signatures from the corresponding documents in Mr. Ansari's prior case, although with what appeared to be an additional "new" signature on the petition and the date of 5/01/14.  UST Exs. 39(a), 39(b), 40(a) and 40(b).

## VII.  Obstruction with Respect to the Hristo Manavski Cases

Mr. Husain mislead the Court when he filed two documents that purport to be affidavits with his Response to the Original Motion for Sanctions.  UST Ex. 11(b), pp. 4-7, one from Hristo Manavski and the other from Ms. Kaghan.  Each document is incorrect.  Mr. Manavski's indicates that he instructed his counsel to refile his case utilizing his other residence when Mr. Manavski did not have even one residence in Illinois.  The Court finds that Mr. Manavski did not have residences in either DuPage County, Illinois or Cook County, Illinois when his two bankruptcy cases were filed.  He might have left some items of personal property in Illinois, but he had resided in Bulgaria for many years before those cases were initiated.  Ms. Kaghan testified that Mr. Manavski moved when the second case was filed; that is contrived, as he could not move to Cook County while he was in Bulgaria.  UST Ex. 64, 49:1-3.  The Court finds that Mr. Manavski did not move from DuPage County to Cook County while he was actually living in Bulgaria.  The testimony offered by Mr. Husain in this regard is incredible.

Mr. Manavski's affidavit also asserts that he instructed his counsel that his debts had not changed.  Husain testified that he did not speak to Mr. Manavski before drafting the affidavit. Trial Tr., 167:15-17.  He communicated with the Debtor's sister, Ms. Manavska, not contemporaneously with Mr. Manavski.  Trial Tr., 168:7 through 170:15.

-56-

Mr. Manavski's affidavit also indicates that his signature was fine and that he did not object to the date on the application being changed. Clearly, none of this was told to Mr. Husain.

Ms. Kaghan testified that she met personally with Mr. Manavski before later stating that she could not recall whether she met with him. UST Ex., 64, 26:16 through 27:15. She testified that Mr. Husain met with Mr. Manavski. *Id.*, 25:5-22. Mr. Husain claims that Ms. Kaghan cleared this up at her second deposition.

Mr. Husain knew that Mr. Manavski did not reside in either Dupage or Cook Counties when his cases were filed asserting that he resided in those locales. Mr. Husain acknowledged that Mr. Manavski lived in Bulgaria in the Motion to Waive that he filed on December 12, 2012. That pleading asserts " [t]he Debtor currently resides in Bulgaria." UST Ex. 10, ¶ 3.

The Court rejects the assertion that Mr. Manavski drove a truck from his residences in DuPage and Cook Counties to justify filing the cases. There is no evidence of record showing that he lived at the respective residences when on certain trips. His sister testified that he once worked at an amusement park in Wisconsin and that he worked as a truck driver for a couple of months before returning to Bulgaria. Trial Tr., 609:10 through 610:9; 637:8-9.

Mr. Manavski used the DuPage County address in his first case, however, Ms. Manavska did not move there until 2009, after Mr. Manavski returned to Bulgaria. Mr. Manavski has never even visited that residence, let alone lived or resided there. Trial Tr., 608:4-6; UST Ex. 63, 18:6-15; UST Ex. 62, 9:20 through 10:5.

## VIII. Obstruction With Respect to Other Cases

The Court rejects Mr. Husain's attempts to blame Ms. Kaghan for photocopying and reusing clients' signatures. At one point he professed ignorance of the practice of photocopying

-57-

and reusing clients' signatures:

> 52. Husain, or Kaghan operating under Husan's direction and control, have modified previously executed documents to reuse the debtor's(s') signature for a new document.

> Answer: Attorney denies Trustee's statement insofar in Paragraph 52 that any signature, new or old, are utilized under the authority or approval of the debtor. Trustee has asked other clients of Attorney and said clients have verified this with Trustee. Trustee intentionally fails to mention to the Court.

Case No. 13-11728, Response to Amended Motion for Sanctions, Docket No. 59, ¶ 52.

His Amended Response is very different.

> Answer: Attorney admits Trustee's statement and denies in part.

> Attorney reviewed and approved original documents. Modifications were done by Kaghan in discussions with the client. Modifications were approved and authorized by the client. Trustee has asked clients of Attorney and said clients have verified this with Trustee. However, said procedures have ceased.

Case No. 13-17728, Amended Response to Motion for Sanctions, Docket No. 64, ¶ 52.

The Court finds that Mr. Husain knew that Ms. Kaghan photocopied and reused debtors' signatures from the very beginning. His attempt to deny this and then explain it by saying that she acted without his knowledge is not credible. His Response shows that he did not make reasonable inquiry before denying the assertion and later admitting the assertion, in part, in his Amended Response.

Ms. Kaghan could not recall a single instance of a debtor authorizing the photocopying and reuse of their signatures. Trial Tr., 992:18 through 993:7; UST Ex. 65, 42:2 through 45:8. Mr. Husain admitted at trial that either he signed documents on clients' behalf or photocopies of their signatures were made. Trial Tr., 770:11-18; 775:13-15. He testified with respect to the *Manavski II* case that "we just refiled the actual documentation in Cook County." Trial Tr.,

-58-

783:23 through 784:9.   Refiling documents without having clients sign them under penalty of

perjury for their subsequent use is improper.   He asserted that he could have refiled documents

from the first case without updating them; this, too, is improper.   Trial Tr., 785:23 through 786:3.

Even though Erum Ahmed testified that she did not review the documents in her joint

case, relying on her husband, this does not excuse Mr. Husain's duty to review all documents

with her.   His obligation to review documents with each debtor can not be excused because one

spouse handles most of the financial matters in a family.

The Court also finds that Mr. Husain was confronted about the problems with his clients'

signatures at the Mirza and Sakeena Baig examinations on July 6, 2011.   He testified that he was

confronted at the examination of Syed Faisal Hussaini on August 9, 2012.   Trial Tr., 760:23

through 761:9.

## IX.  Al-Haroon Husain's Failure to Accept Responsibility

Mr. Husain contended at trial that at one time an attorney was required only to have a

client sign one document at the outset of the case and thereafter use an "e-signature" for all

subsequent filings requiring the client's signature.   Trial Tr., 468:9 through 470: 24.   He has not

cited any provision of the Administrative Procedures for the Court's Case

Management/Electronic Filing System ("APS") that allows this.   He also testified that his

procedure was equivalent to the e-signature process and that he did not comply with it because it

was not fair to clients who need to know exactly what they are reviewing.   He claimed that he

wanted to make sure his clients understand and know what they are signing.   However, his

practices of signing documents on clients' behalf and reusing their signatures do not keep his

clients informed about their bankruptcy cases.

-59-

At one point a single declaration for the petition and documents filed with the petition could be filed, however, a separate declaration containing an original signature, was required for all documents subsequently filed. *See* UST Exs. 17(b), § II.C.1.b; 17(c ), § II.C.1.b; 17(d), § II.C.1.

The U.S. Trustee took issue with Mr. Husain filing a document on January 23, 2015 in this case on behalf of his attorney, Mr. Panagoulias. Trial Tr., 799:11 through 800:23. Mr. Husain responded that Mr. Panagoulias works under him. Mr. Husain may be referring to the version of the APS effective November 1, 2014. Section I.C.4 of that version states:

> Authorized Use of Passwords
>
> A Password may only be used by the Registrant to whom it is issued and by individuals authorized by the Registrant. A Registrant is responsible for all applicable charges associated with use of the Registrant's Password. Any documents filed using the Password will be deemed authorized and signed by the Registrant.
>
> Perhaps, Mr. Panagoulias was authorized by Mr. Husain to file the document.
>
> The Court finds that the burden of proof has not been carried in this regard.

## X. Violation of ABA Model Rule 3.1: Meritorious Claims and Contentions

Rule 3.1 of the ABA Model Rules provides, in pertinent part,:

> A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of exiting law.

Comment 1 to the Rule notes that "[t]he advocate has a duty to use legal procedure for the fullest benefit of the client's cause, but also a duty not to abuse legal procedure." Model Rules of Prof'l Conduct R. 3.1 (2011).

In filing *Manavski II* Mr. Husain presented a fictional bankruptcy petition. He knew that

Mr. Manavski resided in Bulgaria, not in Cook County, Illinois. He filed *Manavski II* in Cook

County, not because he thought that it was where he resided, (had accuracy been his goal, he

would have listed Mr. Manavski's actual residence in Plovidv, Bulgaria), but because he hoped

that a Cook County trustee would allow Mr. Manavski to appear for a meeting of creditors by

Skype.

The Bankruptcy Code provides that "only a person that resides or has a domicile, a place

of business, or property in the United States, or a municipality, may be a debtor under this title."

11 U.S.C. § 109(a). The property of Mr. Manavski alleged to be in the United States amounted

to a few items of personal property that he abandoned here many years before. Mr. Husain did

not investigate what that property was. Ms. Manavska testified that Mr. Manavski left some

clothing, an iron and a television behind when he left the country. She also testified that those

items may have been thrown away and that Mr. Manavski did not leave any cash in the United

States. Trial Tr., 617:6 through 618:12.

> "Domicile" is a place where one has his true, fixed, permanent home, and principal
> establishment, and to which, whenever he is absent, he has the intention of returning, and
> were [sic] he exercises his political rights. There must exist in combination the fact of
> residence and the animus manendi. "Residence" indicates permanency of occupation as
> distinguished from temporary occupation, but does not include so much as "domicile,"
> which requires an intention continued with residence. Residence has been defined to be a
> place where a person's habitation is fixed without any present intention of removing
> therefrom. It is lost by leaving the place where one has acquired a permanent home and
> removing to another place animo non revertendi, and is gained by remaining in such new
> place animo manendi. *In re Garneau,* 127 F. 677, 678-679 (7th Cir. 1904) (citations
> omitted).

*Animo non revertendi* means without intent to return. *Animo manendi* entails an intent to

remain to establish a permanent residence. Mr. Manavski did not testify herein. Consequently,

there is no evidence of record showing that Mr. Manavski went to Bulgaria intending to remain

there without returning to the U.S.  Nor is there evidence of record that Mr. Manavski

intentionally gained a permanent residence in the U.S. when he was here without an intent to

return elsewhere.  When Mr. Manavski left the Untied States in 2008, he did not leave any

meaningful property here that was still around in 2012 and 2013 when his bankruptcy cases were

filed.  His Schedule B filed in *Manavski II* indicates that he had $200 cash, $600 in household

goods and $200 wearing apparel on the filing date; this is not convincing in light of his sister's

testimony that he left a few things behind, things that may have been thrown away.  Because Mr.

Manavski did not have property in the United States, the Court finds that he was not eligible to

be a debtor under the Bankruptcy Code.

## XI. Violation of ABA Model Rule 3.3: Candor Toward the Tribunal

Rule 3.3(a)(1) of the ABA Model Rules provides that "[a] lawyer shall not knowingly . . .

make a false statement of fact or law to a tribunal or fail to correct a false statement of material

fact or law previously made to the tribunal by the lawyer . . . ."  Model Rules of Prof'l Conduct

R. 3.3(a)(1) (2011).  In filing documents with the Court that purported to bear his bankruptcy

clients' signatures as required by Fed. R. Bankr. P. 1008 and 28 U.S.C. § 1746, Mr. Husain

represented to the Court that the documents had been properly executed in accordance with those

requirements.  The evidence shows that on numerous occasions Mr. Husain and Ms. Kaghan,

operating under his sole direction and control, signed documents for clients, had clients sign

incomplete documents and altered dates and reused clients' signatures.

When Mr. Husain filed documents with signatures created or obtained through

one of the above methods he presented the Court with documents that, on their face, indicated

they were signed by the debtor(s) under penalty of perjury.  In reality, they had not been signed

under penalty of perjury.  Mr. Husain's contention that he had "authorization" from each client

with respect to each improperly executed document, even if true, in no way changes the patent

falsity of Husain's representations to the Court.

Fed. R. Bankr. P. 1008 requires that "[a]ll petitions, lists, schedules, statements and

amendments thereto shall be verified or contain an unsworn declaration as provided in 28 U.S.C.

§ 1746."  Section 1746 of Title 28 of the United States Code provides:

> Wherever, under any law of the United States or under any rule, regulation, order,
> or requirement made pursuant to law, any matter is required or permitted to be supported,
> evidenced, established, or proved by the sworn declaration, verification, certificate,
> statement, oath, or affidavit, in writing of the person making the same (other than a
> deposition, or an oath of office, or an oath required to be taken before a specified official
> other than a notary public), such matter may, with like force and effect, be supported,
> evidenced, established, or proved by the unsworn declaration, certificate, verification, or
> statement, in writing of such person which is subscribed by him, as true under penalty of
> perjury, and dated, in substantially the following form:
> . . .
> (2) if executed within the United States, its territories, possessions, or commonwealths: "I
> declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and
> correct. Executed on (Date). [Signature]."

Mr. Husain contends herein that signing his clients' names to documents on their behalf

is a "grey area".  It is not.  Section 1746 requires that when required by law that statements,

declarations and the like be "in writing of such person which is subscribed by him, as true under

penalty of perjury. . . ."  A signature has to be made by the person making the declaration.  For

that reason, pursuant to Fed .R. Bankr. P. 1008, "[a]ll petitions, lists, schedules, statements and

amendments thereto," must be signed by the debtor.  In *In re Hurford,* 290 B.R. 299, 302 (Bankr.

E.D. Mich. 2003) a bankruptcy court held that an attorney is not permitted to sign a client's name

on bankruptcy documents on behalf of his client, that the debtor has to personally sign

documents.

-63-

In limited circumstances courts have allowed family members of those serving in the

armed forces who hold a power of attorney to file a bankruptcy on their behalf. Courts have also

allowed court appointed guardians with express authority to file bankruptcy on behalf of their

wards. *In re Brown,* 163 B.R. 596, 597 (Bankr. N.D. Fla. 1993). *See also In re Nesom,* 76 B.R.

101, (Bankr. N.D. Tex. 1987) (suspension of bankruptcy attorney for forging debtors' signatures

on statement of affairs, schedules, and schedule of current income and expenditures). The *Nesom*

court noted that because the debtors did not sign and swear to the information required of a

debtor under the Bankruptcy Code, 11 U.S.C. § 521, the attorney may have subjected his clients

to loss or revocation of a discharge.

Mr. Husain's other practices of reusing clients' signatures and causing clients to sign

documents in blank prior to their completion are also impermissible. For declarations and

statements required by Fed. R. Bankr. P. 1008 to be valid under 28 U.S.C. § 1746, they must be

subscribed by the declarant as true under penalty of perjury, which does not happen when the

signature is affixed to the document prior to the recordation of the factual representation the

signature represents to be true. *See In re Rivera,* 342 B.R. 435 (Bankr. D.N.J. 2006), *aff'd* 2007

WL 1946656 (D.N.J. 2007) (Sanctioning attorney and law firm for filing certifications that

utilized on-file signatures).

Mr. Husain has contended throughout these proceedings that his clients authorized him to

reuse their signatures and to sign documents on their behalf. The court finds that debtors are not

legally capable of granting attorneys permission to violate the Bankruptcy Rules and the Judicial

Code. The Court finds Mr. Husain's practices of signing clients' names to documents on their

behalf, causing clients' to sign documents prior to the documents' completion and reusing

-64-

clients' signatures for different, subsequent documents are prohibited by the requirement of 28

U.S.C. § 1746 that declarants sign their declarations, verifications, certificates, statements, oaths

and affidavits.  Mr. Husain knowingly made false statements to the Court that such documents

had been executed by his clients in violation of Rule 3.3(a)(1).  That Rule allows an attorney to

correct prior misstatements; Mr. Husain does not contend that he has corrected prior

misstatements.

## XII.  Violation of ABA Model Rule 8.4(c): Misconduct

Rule 8.4(c) provides that "[i]t is professional misconduct for a lawyer to . . . engage in

conduct involving dishonesty, fraud, deceit or misrepresentation." Model Rules of Prof'l

Conduct R. 8.4(c) (2011).

Many courts ruling on ethics rules similar or identical to ABA Model Rule 8.4(c) have

explained that a culpable mental state greater than negligence is necessary to establish a prima

facie violation of Rule 8.4(c).  This requirement is met where the misrepresentation is made

knowingly, or where it is made with reckless ignorance of the truth or falsity thereof.  *Office of

Disciplinary Counsel v. Anonymous Atty. A,* 714 A.2d 402, 407 (Pa. 1998).  Neither actual

knowledge nor intent to deceive on the part of the attorney is necessary to establish a prima facie

misrepresentation violation.  *Id.*

The Court finds that Mr. Husain has conveyed to clients the impression that signing their

names to documents under penalty of perjury is a mere technicality that does not require their

personal attention.  The evidence shows that this impression, along with his habitual disregard

for accuracy and truthfulness in sworn bankruptcy disclosures has led to the filing of materially

inaccurate documents in many cases.  His practice of filing improperly executed documents

-65-

poses an insurmountable obstacle to determining whether his clients are eligible for bankruptcy

relief and whether civil or criminal enforcement actions for false disclosures are warranted.

He contends that his clients take responsibility for representations in deficiently executed

documents when they testify at creditors' meetings that signatures on documents are theirs.

Allowing clients to testify falsely is not to be encouraged and is severely prejudicial to the

administration of justice.

Mr. Husain has committed misconduct in violation of Rule 8.4(c ).  He has filed many

documents that have not been executed by the persons whose signatures appear thereon.   This

amounts to dishonesty and deceit in violation of Rule 8.4(c).

## XIII.  Violation of ABA Model Rule 8.4(d): Misconduct

Rule 8.4(d) of the ABA Model Rules provides that "[i]t is professional misconduct for a

lawyer to . . . engage in conduct that is prejudicial to the administration of justice." Model Rules

of Prof'l Conduct R. 8.4(d) (2011).  Mr. Husain's practices with respect to the execution of what

are supposed to be sworn bankruptcy documents is severely prejudicial to the bankruptcy system

in particular and to the administration of justice in general.

His practices mislead the Court, creditors and parties in interest into believing that

required disclosures have been reviewed by his clients and affirmed under penalty of perjury.

The court system depends on the ethical and professional conduct of attorneys.  Electronic filing

and retrieval of documents are necessary court aids.  However, ethical, dependable performance

by lawyers remains indispensable. *Rivera,* 342 B.R. at 468.

## XIV.  Discipline

Proceedings for disbarment and suspension are not for the purpose of punishment, but

rather seek to "determine fitness of an officer of the court to continue in that capacity and to protect the courts and the public from the official ministration of persons unfit to practice." *In re Echeles,* 430 F.2d 347, 349-350 (7th Cir. 1970 (citing *Ex parte Wall*, 107 U.S. 265 (1883)). The issue in this disciplinary proceeding is the public interest and an attorney's right to continue to practice a profession imbued with public trust. *Id.,* at 350 (citations omitted). The discipline imposed should be crafted to protect the public, to maintain the integrity of the profession and to protect the administration of justice from reproach. *In re Spak*, 188 Ill. 2d 53, 67-68 (1999).

Local Bankruptcy Rule 9020-4B(A)(1)(b) provides that "discipline includes, but is not limited to temporary or permanent suspension from practice before the bankruptcy court, reprimand, censure, or such other disciplinary action as the circumstances may warrant, including but not limited to restitution of funds, satisfactory completion of educational programs, compliance with treatment programs, and community service."

The Court looks to the American Bar Association's Standards for Imposing Lawyer Sanctions (the "ABA Standards") in determining the appropriate sanction. Mr. Husain's conduct falls with ABA Standard 6.11:

> 6.1 False Statements, Fraud, Misrepresentation
>
> Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving conduct that is prejudicial to the administration of justice or that involves dishonesty, fraud, deceit, or misrepresentation to a court:
>
> 6.11 Disbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, submits a false document , or improperly withholds material information, and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding.

ABA, Standards for Imposing Lawyer Sanctions § 6.11 (1986, amended 1992).

Section 3.0 of the ABA Standards states:

> In imposing a sanction after a finding of lawyer misconduct, a court should
> consider the following factors:
>
>> (a) the duty violated;
>> (b) the lawyer's mental state;
>> (c ) the potential or actual injury caused by the lawyer's misconduct; and
>> (d) the existence of aggravating or mitigating factors.

ABA, Standards for Imposing Lawyer Sanctions § 3 (1986, amended 1992).

Based on the scope and nature of the misconduct proven herein and in consideration of

the factors that should be considered in imposing discipline on lawyers as well as Mr. Husain's

continuing lack of truthfulness, he is hereby permanently suspended from the practice of law in

the Bankruptcy Court for the Northern District of Illinois. Mr. Husain is also ordered to disgorge

to his clients all fees collected in the cases referred to herein.

Mr. Husain has no regard for the truth as demonstrated by the purportedly sworn

documents he filed on behalf of his clients and in his less than truthful testimony in this

proceeding. His contention that his clients are responsible for errors and omissions when they

verify their signatures at creditors meetings is unsupported by legal authority and common sense.

Mr. Husain intended to deceive the Court, his clients' creditors and other interested parties when

he filed the numerous improperly executed documents. He was confronted concerning his

improperly executed documents by Stephen Wolfe, Trial Attorney with the U.S. Trustee's Office,

in 2011. He was confronted again in 2012 when he changed from signing his clients' names to

documents to photocopying and reusing their signatures. After a judge admonished him in

January, 2014, he continued to reuse signatures. He also routinely caused his clients to sign

-68-

blank documents at the outset of representing them.

Mr. Husain is not capable of reform. He could have abandoned the practices complained of in 2011 and 2012. Instead, he continued to engage in massive efforts that amount to deceit and misrepresentation.

As aptly noted by the U.S. Trustee in its Proposed Findings of Fact and Conclusions of Law filed on March 26, 2015 at Docket No. 37, ¶ 317, Mr. Husain has caused the legal system substantial damage. The bankruptcy system relies upon attorneys' honesty and self-regulation to properly function. Mr. Husain's conduct led his clients to believe that accuracy in bankruptcy disclosures was optional and numerous inaccuracies resulted; he jeopardized potential criminal and civil enforcement actions that might have been warranted against his clients; he exposed his clients to adverse actions, including, attacks on their bankruptcy discharges under 11 U.S.C. § 727(d) for obtaining discharges fraudulently. In addition, he caused several of the judges of this court, the U.S. Trustee and case trustees to expend hundreds of hours addressing his misconduct and the materially inaccurate documents he filed.

The Court does not believe Mr. Husain's contention that Ms. Kaghan is responsible for the improper signing and reusing of his clients' signatures. Had Mr. Husain adequately reviewed documents with his clients before filing them his office would not have had to resort to signing clients' names to documents and reusing their signatures from documents they had previously signed. Ms. Kaghan's testimony to the contrary carries no weight. Mr. Husain served as her attorney at one of her depositions and arranged for an attorney to represent her herein. Mr. Husain filed an affidavit signed by Ms. Kaghan in response to the original Motion for Sanctions. *See* Case No. 13-11728, Docket No. 26, p. 6, ¶¶ 5-8. She stated that she was instructed by

-69-

Debtor Hristo Manavski to do several things when neither Ms. Kaghan nor Mr. Husain ever spoke to Mr. Manavski, except for a short telephone conversation Mr. Husain alleges that he had with him.

Mr. Husain's presentation of Ms. Kaghan incredible testimony demonstrates that he does not have a firm grasp of his obligation to be truthful with the Court. This lack of cooperation and veracity have been considered in imposing discipline herein. *See In re Smith,* 168 Ill. 2d 269, 296 ( 1995) ("Cooperation in the disciplinary proceeding is an additional factor that this court weighs in the determination of a disciplinary sanction."); *In re Rosenberg,* 413 Ill. 567, 575 (1953) (noting that uncharged false testimony relating to matters under investigation was further demonstration of unfitness to practice law).

The legal work Mr. Husain performed in the cases noted herein was of poor quality. Although some clients received bankruptcy discharges, many amended case documents had to be filed, many depositions had to be taken and the relief his clients were entitled to was delayed by the disciplinary proceeding. For those reasons, the Court finds that the fees he collected exceed the reasonable value of the services he extended on behalf of his clients. Pursuant to 11 U.S.C. § 329(b), Mr. Husain is ordered to disgorge those payments to his clients.

Mr. Husain complied with the requirement of Fed. R. Bankr. P. 2016 to disclose fees paid to him by his clients in only one of the twenty two cases at issue herein. Fee disclosures in the debtors' Statements of Financial Affairs, Question 9, often conflict with deposition testimony of his clients. The U.S. Trustee's Proposed Findings of Fact and Conclusions of Law at ¶ 323 includes a chart of information obtained from three sources of attorney compensation - Rule 2016 Statement, Statement of Financial Affairs - Question 9 and deposition testimony.

The Court will order Mr Husain to return to his clients the following amounts taken from the Statements of Financial Affairs and Rule 2016 Statements:

| Certified Funds Payable To: | Amount |
| --- | --- |
| Erum Ahmed[5] | $750 |
| Shahid Ahmed | $750 |
| Aaron Rodriguez | $1,500 |
| Baligh Abutaleb | $1,500 |
| Saghir Badani[6] | $2,500 |
| Istiyak and Azra Patel | $1,500 |
| Mohammad Khan and Saima Khalid | $1,500 |
| Syed M. Hussain and Affaf Baig | $900 |
| Farooq and Sara Sultan[7] | $3,700 |
| Mirza and Sakeena Baig | $1,500 |
| Kauser Banu | $1,500 |
| Syed Faisal Hussaini | $1,500 |
| Ghosia Iqbal | $1,500 |
| Ghulam Haider and Nazra Begum | $1,500 |
| Fadi Freij | $1,500 |
| Ashout and Rina Ibraheem | $1,500 |
| Fareedun Ansari | $1,500 |
| Ahmed and Nadya Nijem | $1,500 |

---

[5]Shahid and Erum Ahmed were divorced after their bankruptcy case.  The restitution payable to each is one half of the $1,500 attorney fee paid.

[6]In the case of Saghir Badani, the Statement of Financial Affairs is missing the relevant page.  The $2,500 fee is based on Mr. Badani's deposition testimony.

[7]The restitution amount payable to Farooq and Sara Sultan consists of $2,500 paid in the OF&A case and $1,200 paid in their personal case.

Mr. Husain is ordered to deliver the payments set forth above to the U.S. Trustee who

will then distribute them to the clients with a cover letter inviting each client to contact him if the

refund payment is not full reimbursement of all funds paid to Mr. Husain for bankruptcy related

services.  If the U.S. Trustee discovers that a client paid Mr. Husain more than the amount

ordered to be refunded, the U.S. Trustee may bring a motion for supplemental restitution before

the Court.

## XVI.  Reimbursement of U.S. Trustee's Out-of Pocket Expenses

The U.S. Trustee has requested that Mr. Husain be ordered to reimburse the out-of-pocket

expenses incurred in the prosecution of this disciplinary proceeding.  Those expenses include:

Federal Express charges, court reporting charges, and witness appearance fees.  *See In re Liou,*

503 B.R. 56, 78 (Bankr. N.D. Ill. 2013).   As noted in *Liou,* Illinois Supreme Court Rule 773(b)

allows the court to award costs in connection with an attorney discipline proceeding.  Based on

that authority, judgment for costs is awarded to the United States Trustee.  Costs may be sought

by separate application.

## XV. Conclusion

Accordingly, effective July 31, 2015 at 5:00 p.m., Attorney Al-Haroon Husain will be permanently suspended from the practice of law before the Bankruptcy Court for the Northern District of Illinois. He shall refund to the clients listed above fees earned in their cases. His Password for electronic filing will be revoked at that date and time.

This Order will be reported to the Executive Committee of the District Court for Northern District of Illinois and to the Illinois Attorney Registration & Disciplinary Commission.

Dated:  July 9, 2015                    ENTERED:

_____
Jacqueline P. Cox
United States Bankruptcy Judge

-73-